ADVISORY OPINION *re* CONSTITUTIONALITY OF 1974 PA 242

Docket No. 56354. Argued January 8, 1975 (Calendar No. 9).—Decided April 29, 1975.

The Senate requested an advisory opinion on whether § 18(3) of Enrolled House Bill No. 6100 (1974 PA 242, effective July 26, 1974) is constitutional in relation to Const 1963, art 8, § 2, as amended, which prohibits state aid to nonpublic schools. Section 18(3) provides that the State Board of Education shall purchase textbooks and supplies and loan or provide them free of charge on an equal basis to all children of school age residing in each school district of the state and enrolled in grades 1 through 12. *Held:*

1. The Court's review is properly restricted to the question specifically raised by the Senate in its request for an advisory opinion. There is no need to consider whether the challenged program benefits or penalizes religion but only whether it directly or indirectly aids or maintains a nonpublic school.

2. Incidental services may be provided to private schools consonant with the constitutional amendment as construed by the Supreme Court.

3. Textbooks and supplies are not commodities "incidental" to a school's maintenance and support; they are essential aids that constitute a primary feature of the educational process and a primary element required for any school to exist.

4. Furnishing either school supplies or textbooks to private school students as called for in the statute violates Const 1963, art 8, § 2.

5. The language of § 18(3) should be read to apply only to public school students and thereby preserve its constitutionality.

Levin, J., who was joined by Williams, J., concurred in the scope of the advisory opinion and dissented on the construction and constitutionality of the statute on the grounds that:

1. The constitutional question should not be avoided by

REFERENCES FOR POINTS IN HEADNOTES

[1–5, 9–13] 68 Am Jur 2d, Schools §§ 79, 289, 299.
[6–8] 16 Am Jur 2d, Constitutional Law § 111.

construing § 18(3) as referring only to children attending public schools, because the Senate would not have requested an advisory opinion if it were not intended that textbooks and supplies be loaned or provided to nonpublic-school children.

2. A program funded by the state which tends to support a general educational program of a nonpublic school is barred by the constitutional amendment unless the dominant effect of the program is the furtherance of a substantial governmental purpose, educational or noneducational, clearly distinguishable from support of general educational programs.

3. Whether the dominant effect of providing textbooks to nonpublic-school children is implementation of such a governmental purpose depends on a factual appraisal the Court cannot make because no factual record has been made.

4. The statute is unconstitutional insofar as it requires school districts to furnish nonpublic-school children with ordinary consumable supplies.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—ADVISORY OPINIONS—STATUTES—SCHOOLS—
    TEXTBOOKS—SUPPLIES.

The Supreme Court's review in an advisory opinion on a statute providing that each school district shall purchase and loan or provide textbooks and supplies to all children of school age residing in such district and enrolled in grades 1–12 is restricted to the question specifically raised by the Senate in its request, which was whether the statute violates the constitutional provision that no public monies or property shall be used to aid or maintain any nonpublic school; any other state or Federal constitutional issues which might arguably arise in the course of reviewing that statute will not be considered and there is no need to consider whether the challenged program benefits or penalizes religion but only whether it directly or indirectly aids or maintains a nonpublic school (Const 1963, art 8, § 2; 1974 PA 242, § 18[3]).

2. CONSTITUTIONAL LAW—NONPUBLIC SCHOOLS—AID.

The constitutional provision that no public monies or property shall be used to aid or maintain any nonpublic school forbids aid that is a "primary" element of the support and maintenance of a private school but permits aid that is only "incidental" to the private school's support and maintenance (Const 1963, art 8, § 2).

3. SCHOOLS AND SCHOOL DISTRICTS—TEXTBOOKS—SUPPLIES.

Textbooks and supplies are not commodities "incidental" to a school's maintenance and support; they are essential aids that constitute a "primary" feature of the educational process and a "primary" element required for any school to exist.

4. CONSTITUTIONAL LAW—PRIVATE SCHOOLS—PUBLIC SUPPORT.

The constitutional provision which forbids the public support of private schools must be read to bar funding of primary and essential elements of a private school's existence (Const 1963, art 8, § 2).

5. CONSTITUTIONAL LAW—SCHOOLS—SUPPLIES—TEXTBOOKS—STATUTES —CONSTRUCTION.

Supplying either school supplies or textbooks to private school students as called for in a statute which provides that each school district shall purchase and loan or provide textbooks and supplies to all children of school age residing in such district and enrolled in grades 1–12 violates the constitutional provision that no public monies or property shall be used to aid or maintain any nonpublic school; however, the constitutionality of the statute should be preserved by reading it to apply only to public school students (Const 1963, art 8, § 2; 1974 PA 242, § 18[3]).

OPINION DISSENTING IN PART

WILLIAMS and LEVIN, JJ.

6. CONSTITUTIONAL LAW—ADVISORY OPINIONS—QUESTIONS CONSIDERED.

*A request to the Supreme Court for an advisory opinion should particularize any claims of unconstitutionality; it is not the function of the Court to search the Constitution for "any other relevant provision" which may have been violated by an act of the Legislature.*

7. CONSTITUTIONAL LAW—ADVISORY OPINIONS—STATUTES—QUESTIONS CONSIDERED.

*The Supreme Court is not constitutionally authorized to furnish advisory opinions to the Attorney General or amici curiae; therefore, constitutional questions raised by the Attorney General and amici in addition to the specific question raised by the Senate in its request for an advisory opinion are not considered (Const 1963, art 3, § 8).*

8. CONSTITUTIONAL LAW—ADVISORY OPINIONS—STATUTES—SCHOOLS—
   TEXTBOOKS AND SUPPLIES—QUESTIONS CONSIDERED.

   *Whether the statute which provides that each school district
   shall purchase and loan or provide textbooks and supplies to all
   children of school age residing in such district enrolled in
   grades 1–12 violates the Establishment Clause of the First
   Amendment or the freedom of worship or title-body clauses of
   the Michigan Constitution is not considered where the Senate
   requested an advisory opinion on whether the statute was
   constitutional in relation to the constitutional provision that no
   public monies shall be used to aid or maintain any nonpublic
   school and "any other relevant provision of the state or Federal
   Constitutions" (US Const, Am I; Const 1963, art 1, § 4, art 4,
   § 24, art 8, § 2; 1974 PA 242, § 18[3]).*

9. CONSTITUTIONAL LAW—STATUTES—SCHOOLS—TEXTBOOKS—SUPPLIES
   —ADVISORY OPINIONS.

   *The suggestion that a constitutional question be avoided by
   construing the statute which provides that each school district
   shall purchase and loan or provide textbooks and supplies to all
   children of school age residing in such district and enrolled in
   grades 1–12 should be rejected because the Senate would not
   have requested an advisory opinion on the constitutionality of
   this provision if it were not intended that textbooks and sup-
   plies be loaned or provided to nonpublic-school children (1974
   PA 242, § 18[3]).*

10. CONSTITUTIONAL LAW—NONPUBLIC SCHOOLS—AID—QUESTIONS
    CONSIDERED—RELIGION.

    *The constitutional provision that no public monies shall be used
    to aid or maintain any nonpublic school does not speak of
    religion but of nonpublic schools and it does not preclude
    establishment or interference with religion; therefore, whether
    a statute challenged as violating this provision unduly benefits
    or burdens religion need not be considered (Const 1963, art 8,
    § 2).*

11. CONSTITUTIONAL LAW—NONPUBLIC SCHOOLS—AID.

    *The constitutional provision barring the use of public monies or
    property to aid or maintain nonpublic schools does not seek to
    bar benefits to nonpublic-school children, their parents, or
    persons employed by nonpublic schools as such, but, rather,
    benefits to children, parents, or persons so employed which
    would subvert its purpose (Const 1963, art 8, § 2).*

12. CONSTITUTIONAL LAW—NONPUBLIC SCHOOLS—AID—GOVERNMEN-
   TAL PURPOSE.

   *The constitutional provision barring the use of public monies or
   property to aid or maintain nonpublic schools clearly bars state
   support of a nonpublic school's general educational programs
   but it does not bar all state action which tends to support such
   programs; a categorical program funded by the state which
   tends to support a general educational program of a nonpublic
   school is barred unless the dominant effect of the program is
   the furtherance of a substantial governmental purpose, educa-
   tional or noneducational, clearly distinguishable from support
   of general educational programs (Const 1963, art 8, § 2).*

13. CONSTITUTIONAL LAW—STATUTES—SCHOOLS—TEXTBOOKS—SUP-
   PLIES.

   *The statute which provides that each school district shall pur-
   chase and loan or provide textbooks and supplies to all children
   of school age residing in such district and enrolled in grades 1–
   12 is unconstitutional insofar as it requires school districts to
   furnish ordinary consumable supplies to nonpublic-school chil-
   dren; however, constitutionality of the textbook program cannot
   be resolved until the facts are further developed to show
   whether the dominant effect of providing textbooks to non-
   public-school children is to achieve a measure of guidance of
   nonpublic school instruction in the subjects for which such
   textbooks are adopted, guidance which would be a substantial
   governmental purpose clearly distinguishable from support of
   general educational programs (1974 PA 242, § 18[3]).*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Gerald F.
Young* and *Charles F. Keeley,* Assistants Attorney
General, supporting constitutionality.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* and *George L. McCargar,* Assistant
Attorney General, opposing constitutionality.

Amici Curiae:

*Fay O'Hare,* for League of Women Voters of
Michigan.

*Hubbell, Blakeslee, McCormick & Houlihan* (by *Stuart D. Hubbell),* for parents and school children.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellmann* and *Marshall W. Anstandig),* for Michigan Education Association.

*Harold Norris, Hershell Fink* and *Elaine Grand,* for Michigan Regional Office of the American Jewish Congress, The Jewish Community Council of Metropolitan Detroit, and The Anti-Defamation League of B'nai B'rith of Michigan.

*Douglas J. Robson,* for Michigan Association of School Boards and Michigan Association of School Administrators.

SWAINSON, J. I concur in sections I, II and III of Justice LEVIN's opinion, but find it necessary to disagree with his analysis and result expressed in part IV. In my opinion supplying either school supplies or textbooks to private school students as called for in 1974 PA 242, § 18(3), violates Const 1963, art 8, § 2 [Proposal C] as previously interpreted in *Traverse City School Dist v Attorney General,* 384 Mich 390; 185 NW2d 9 (1971).

A. *The scope of the advisory opinion.*

In sections I and III of his opinion Justice LEVIN limits the scope of the issues under consideration in two ways. First, in section I he restricts the Court's review to the question specifically· raised by the Senate in its formal request for an advisory opinion:

"Is section 18(3) of Enrolled House Bill No. 6100

constitutional in relation to section 2 of Article VIII of the Constitution of Michigan, as amended, * * * ?"

Then, in section III Justice LEVIN eschews consideration of any other state or Federal constitutional issues which might arguably arise in the course of reviewing § 18(3) in light of Const 1963, art 8, § 2. Justice LEVIN states:

"Proposal C [Const 1963, art 8, § 2, second paragraph] does not speak of religion but of nonpublic schools. Proposal C, in contrast with the First Amendment, does not preclude establishment or interference with religion.
"We therefore have no need to consider whether the challenged program unduly benefits or burdens religion but only whether it directly or indirectly aids or maintains a nonpublic school." (Footnote omitted.)

While the scope of review becomes exceedingly narrow under Justice LEVIN's formulation, I believe that he has proposed a reasonable approach for the Court to follow in this advisory opinion. By definition, we are required to proceed in a factual vacuum and interpret the law without the benefits of prior fact finding and legal review. We are accordingly forced to make assumptions concerning how the questioned statute would operate once effective. I think that it is wise for the Court to therefore limit its own range of conjecture as much as possible.

B. *The Constitutionality of § 18(3) under Const 1963, art 8, § 2 (Proposal C).*

In *Traverse City School Dist v Attorney General,* 384 Mich 390; 185 NW2d 9 (1971), this Court outlined the impact of Proposal C on various types of educational assistance programs. Proceeding

from the premise that the voters in adopting Proposal C were simply intent on outlawing parochiaid,[1] the Court found it unnecessary to adopt "a strict 'no benefits, primary or incidental' rule".[2] 384 Mich 390, 413. Instead, the Court favored a reasonable construction of the amendments language. Under this construction the Court concluded that shared time programs—if properly controlled by the public school system—and auxiliary services such as health care and remedial reading programs[3] could be provided to private schools consonant with the mandate of proposal C.

In my opinion the Court reached correct conclusions in the Traverse City School District case because the services examined therein were properly classified as "incidental" to a private school's establishment and existence. (See fn 2, supra).

---

[1] "As far as the voter was concerned, the result of all the preelection talk and action concerning Proposal C was simply this—Proposal C was an anti-parochiaid amendment—no public monies to run parochial schools—and beyond that all else was utter and complete confusion." 384 Mich 390, 410, fn 2.

[2] The Court carried over to the non-support for private school provisions found in Proposal C the construction advanced in *Advisory Opinion re Constitutionality of PA 1970, No 100*, 384 Mich 82; 180 NW2d 265 (1970), for distinguishing between permissible and impermissible state assistance to parochial schools. Since Proposal C speaks broadly in terms of the support and maintenance of all private schools, I think it is a proper interpretation of the *Traverse City School Dist v Attorney General* rule to state that Proposal C forbids aid that is a "primary" element of the support and maintenance of a private school but permits aid that is only "incidental" to the private school's support and maintenance. 384 Mich 390, 413.

[3] In *Traverse City School Dist v Attorney General, supra,* the Court adopted the description of auxiliary services set forth in MCLA 340.622; MSA 15.3622. In relevant part that section provides:

"Such auxiliary services shall include health and nursing services and examinations; street crossing guards services; national defense education act testing services; speech correction services; visiting teacher services for delinquent and disturbed children; school diagnostician services for all mentally handicapped children; teacher counsellor services for physically handicapped children; teacher consultant services for mentally handicapped or emotionally disturbed children; remedial reading; and such other services as may be determined by the legislature."

Such programs as shared time and auxiliary services, to be sure, do help a private school compete in today's harsh economic climate; but, they are not "primary" elements necessary for the school's survival as an educational institution. These incidental services are useful only to an otherwise viable school and are not the type of services that flout the intent of the electorate expressed through Proposal C.

A very different situation is presented, I find, in the case of the textbooks and supplies that would be made available to private schools under § 18(3).[4] When we speak of textbooks and supplies we are no longer describing commodities "incidental" to a school's maintenance and support. Textbooks and supplies are essential aids that constitute a "primary" feature of the educational process and a "primary" element required for any school to exist. I quote from *Bond v Ann Arbor School Dist,* 383 Mich 693, 702; 178 NW2d 484; 41 ALR3d 742 (1970):

> "Applying either the 'necessary elements of any school's activity' test or the 'integral fundamental part of the elementary and secondary education' test, it is clear that books and school supplies are an essential part of a system of free public elementary and secondary schools."

However Proposal C is to be construed, I believe that if the will of the electorate is to be respected it must be read to bar public funding for primary and essential elements of a private school's existence.

---

[4] The words of § 18(3) provide that the textbooks and supplies are to be extended to "all children of school age residing in such district". In reality, and for the purposes of constitutional analysis, § 18(3) provides the aid to the private schools. *Gaffney v State Department of Education,* 192 Neb 358; 220 NW2d 550, 556 (1974).

As I understand Justice LEVIN's opinion he does not actually read Proposal C differently than I do herein. He states, for example, that "Proposal C clearly bars state support of a nonpublic school's general educational programs"; and, he points to the same language from *Bond v Ann Arbor School Dist* that I have quoted above. Furthermore, he reaches the conclusion that providing school supplies to private schools does violate the prohibition of Proposal C. Turning to the textbooks, however, Justice LEVIN, at least for the moment, reaches a different result by engrafting a new test onto the interpretation of Proposal C expressed in *Traverse City School Dist v Attorney General, supra.* He argues that supplying textbooks to private schools is permissible if the "dominant effect of the program is furtherance of a substantial governmental purpose, educational or noneducational, clearly distinguishable from support of general educational programs." While I find this to be an interesting test, I do not think that it has any applicability to our present problem. Proposal C forbids the public support of private schools. I have failed to discover any indication in the language of Proposal C that the people intended to allow primary support for private schools if the private schools were willing to subject themselves to the textbook censorship of the local public school system.

C. *Conclusion.*

In my opinion, furnishing either textbooks or school supplies to private schools constitutes prohibited primary support under Proposal C. I would accordingly read the language of § 18(3) to apply only to public school students and thereby pre-

serve its constitutionality. *Traverse City School Dist v Attorney General, supra,* 384 Mich 390, 406.

T. G. KAVANAGH, C. J., and M. S. COLEMAN and J. W. FITZGERALD, JJ., concurred with SWAINSON, J.

LEVIN, J. *(dissenting in part).* By previous order,[1] this Court granted the request of the Senate for an advisory opinion on the constitutionality of 1974 PA 242, § 18(3), which provides that each school district "shall purchase and loan or provide textbooks[2] and supplies[3] to all children of school age residing in such district and enrolled in grades 1–12".[4]

The Attorney General, at the request of this Court, has briefed both sides of the question and five amicus briefs have been submitted.

A number of issues are raised.

## I

We address first the scope of the issues properly before us.

The Constitution provides:

---

[1] Unpublished order dated October 11, 1974.

[2] " 'Textbook' means a book which pupils are required to use as a text in a particular class in the schools in each local school district." 1974 PA 242, § 5(19).

[3] " 'Supplies' means consumable materials such as pencils, paper and erasers which must be provided to pupils in the schools in each local school district." 1974 PA 242, § 5(20).

[4] "Beginning in the 1975–76 school year in each school district of the state the board of education shall purchase and loan or provide textbooks and supplies to all children of school age residing in such district and enrolled in grades 1–12. The textbooks and supplies shall be provided or loaned free of charge to all such children on an equal basis. It is the intent of the legislature to reimburse local school districts for expenses incurred in this subsection." MCLA 388.1118; MSA 15.1919(518).

"Either house of the legislature or the governor may request the opinion of the supreme court on important questions of law upon solemn occasions as to the constitutionality of legislation after it has been enacted into law but before its effective date." Const 1963, art 3, § 8.

While the challenged act states the intent of the Legislature that an advisory opinion be requested,[5] the formal request from the Senate, "after it has been enacted into law but before its effective date", states:

"The question on which an advisory opinion is hereby being sought, pursuant to Article III, section 8 of the Michigan Constitution, is as follows:

"Is Section 18(3) of Enrolled House Bill No. 6100 constitutional in relation to section 2 of Article VIII of the Constitution of Michigan, as amended, and any other relevant provision of the State or Federal Constitutions?"

Our order granting the request for an advisory opinion did not advert to whether this Court would consider questions other than those arising under the constitutional provision, Const 1963, art 8, § 2, specifically referred to by the Senate.

We recently rejected for lack of clarity a request of the Governor for an advisory opinion.[6] It is not our function to search the Constitution for "any other relevant provision" which may have been violated by an act of the Legislature. In *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 484; 208 NW2d 469 (1973), we said:

---

[5] "It is the intent of the legislature that an advisory opinion upon the constitutionality of section 18(3) of this amendatory act be secured pursuant to section 8 of article 3 of the state constitution of 1963 from the supreme court after this amendatory act is enacted into law but before its effective date." 1974 PA 242, § 3.

[6] Request for *Advisory Opinion re Constitutionality of 1974 PA 272,* 393 Mich 916 (1975).

"When a court holds an act to be constitutional it does no more than deny a particular claim of unconstitutionality". A request for an advisory opinion should "particularize any claims of unconstitutionality".

The Attorney General and amici raise constitutional questions in addition to the specific question raised by the Senate. In *Advisory Opinion re Constitutionality of 1972 PA 294, supra,* p 485, we stated: "We are not, however, constitutionally authorized to furnish advisory opinions to the Michigan Trial Lawyers Association or a committee of the State Bar". Similarly, we are not constitutionally authorized to furnish advisory opinions to the Attorney General or amici.

Accordingly, we do not consider whether the challenged act violates the Establishment Clause of the First Amendment,[7] Const 1963, art 1, § 4, or the title-body clause of Const 1963, art 4, § 24.

## II

While § 18(3) does not expressly require that textbooks and supplies be loaned or provided to nonpublic as well as public school children, the Senate would not have requested an opinion on the constitutionality of this provision if it were not intended that textbooks and supplies be loaned or provided to nonpublic school children. Accordingly, we reject the suggestion that we avoid the consti-

---

[7] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." US Const, Am I.

*See Board of Education v Allen,* 392 US 236, 238; 88 S Ct 1923; 20 L Ed 2d 1060, 1062–1063 (1968). *See also, Everson v Board of Education,* 330 US 1; 67 S Ct 504; 91 L Ed 711 (1947); *Committee for Public Education & Religious Liberty v Nyquist,* 413 US 756; 93 S Ct 2955; 37 L Ed 2d 939 (1973).

tutional question by construing § 18(3) as referring only to children attending public schools.

## III

A second paragraph of Const 1963, art 8, § 2, commonly known as Proposal C, was added by vote of the people in 1970:

"No public monies or property shall be appropriated or paid or any public credit utilized, by the legislature or any other political subdivision or agency of the state directly or indirectly to aid or maintain any private, denominational or other nonpublic, pre-elementary, elementary, or secondary school. No payment, credit, tax benefit, exemption or deductions, tuition voucher, subsidy, grant or loan of public monies or property shall be provided, directly or indirectly, to support the attendance of any student or the employment of any person at any such nonpublic school or at any location or institution where instruction is offered in whole or in part to such nonpublic school students. The legislature may provide for the transportation of students to and from any school."

Proposal C does not speak of religion but of nonpublic schools.[8] Proposal C, in contrast with the First Amendment, does not preclude establishment or interference with religion.

We therefore have no need to consider whether the challenged program unduly benefits or burdens religion but only whether it directly or indirectly aids or maintains a nonpublic school.

## IV

In *Bond v Ann Arbor School District,* 383 Mich

[8] We read the word "denominational" in the phrase "private, denominational or other nonpublic" schools as making explicit that Proposal C applies to nonpublic schools with denominational affiliations as well as other private schools.

693, 702; 178 NW2d 484 (1970), this Court declared, "[I]t is clear that books and school supplies are an essential part of a system of free public elementary and secondary schools" and held that the first paragraph of Const 1963, art 8, § 2[9] obliged the government to provide free textbooks and supplies to students attending public elementary and secondary schools.

The act now challenged extends to nonpublic school children the provision of free textbooks and supplies.

It is contended that providing textbooks and supplies to nonpublic school children "supports the[ir] attendance" at a nonpublic school in violation of the second sentence of Proposal C. Proposal C does not seek to bar benefits to nonpublic school children, their parents and persons employed by nonpublic schools as such but, rather, benefits to children, parents and persons so employed which would subvert the purpose of the first sentence barring the use of public monies or property to aid or maintain nonpublic schools.

The challenged act subsidizes part of the cost of nonpublic school general educational programs by requiring that public school districts offer materials—textbooks and supplies—essential to those programs to children residing in the district who attend nonpublic schools. Use of the textbooks and supplies would reduce the cost of general educational programs in those nonpublic schools which theretofore provided textbooks and supplies. In schools which did not furnish textbooks and supplies, students and parents would be relieved of that cost.

---

[9] "The legislature shall maintain and support a system of free public elementary and secondary schools as defined by law. Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin."

While Proposal C clearly bars state support of a nonpublic school's general educational programs, it does not bar all state action which tends to support such programs. This Court in construing Proposal C has eschewed "a strict 'no benefits, primary or incidental' rule".[10] The state may exempt property of a nonpublic school from taxation and provide, without cost, police, fire and other public services.[11] In *Traverse City School District v Attorney General,* 384 Mich 390, 417–418; 185 NW2d 9 (1971), this Court held that certain special educational and noneducational programs, known as auxiliary services, were not violative of Proposal C.[12]

Where a categorical program funded by the state tends to support a general educational program of a nonpublic school, it is barred by Proposal C unless the dominant effect of the program is furtherance of a substantial governmental purpose, educational or noneducational, clearly distinguishable from support of general educational programs.

We can think of no clearly distinguishable substantial governmental purpose in providing ordinary writing paper, pencils and similar consumables.

---

[10] Traverse City School District v Attorney General, *384 Mich 390, 413; 185 NW2d 9 (1971).*

[11] *Traverse City, supra,* p 429; cf. *Walz v Tax Commission of the City of New York,* 397 US 664, 671; 90 S Ct 1409; 25 L Ed 2d 697 (1970).

[12] The nature of those auxiliary services is described in the statute:

"Such auxiliary services shall include health and nursing services and examinations; street crossing guards services; national defense education act testing services; speech correction services; visiting teacher services for delinquent and disturbed children; school diagnostician services for all mentally handicapped children; teacher counsellor services for physically handicapped children; teacher consultant services for mentally handicapped or emotionally disturbed children; remedial reading; and such other services as may be determined by the legislature." MCLA 340.622; MSA 15.3622.

A nonpublic school cannot be required to adopt a textbook prescribed by the state or a school district of the state. The challenged act, by offering free textbooks, may encourage the adoption by nonpublic schools of textbooks approved by a school district of the state. To the extent nonpublic schools do adopt state or school district approved and provided textbooks, the state or school district may achieve a measure of guidance of nonpublic school instruction in the subjects for which such textbooks are adopted. The establishment and implementation of such guidance would be a substantial governmental purpose clearly distinguishable from support of general educational programs. Whether the dominant effect of providing textbooks to nonpublic school children is implementation of such a governmental purpose depends on a factual appraisal we cannot make because no factual record has been or—this being a request for an advisory opinion—could be made.

Without such a record, we cannot further advise. We have previously adverted to the limitations inherent in an advisory opinion.[13] Where resolution requires a factual presentation, our advice necessarily will often be qualified by the absence of a factual predicate.

We appreciate that our construction of Proposal C in this opinion and in *Traverse City, supra,* requires the courts to make subtle determinations. "The argument that making 'fine distinctions' between what is and what is not absolute under the Constitution is to render us a government of men, not laws, gives too little weight to the fact that it is an essential part of adjudication to draw distinctions, including fine ones, in the process of inter-

[13] *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 483; 208 NW2d 469 (1973).

preting the Constitution." *Walz v Tax Commission of the City of New York,* 397 US 664, 679; 90 S Ct 1409; 25 L Ed 2d 697 (1970).

We advise that 1974 PA 242 is unconstitutional insofar as it requires school districts to furnish nonpublic school children ordinary consumable supplies. Until the facts are further developed, we are not able to resolve the constitutionality of the textbook program.

Williams, J., concurred with Levin, J.

The late Justice T. M. Kavanagh took no part in the decision of this case.