REQUEST FOR ADVISORY OPINION ON THE
CONSTITUTIONALITY OF 1979 PA 57

Docket No. 63476. Decided July 30, 1979. See opinion on same request
by the Governor, *post,* 506.

The Legislature requested an advisory opinion on the constitu-
tionality of 1979 PA 57, which is an act to implement the
amendment to the Constitution concerning limits on state
spending and shifting the tax burden to local government,
commonly known as the Headlee Amendment.

In a per curiam opinion signed by Justices Kavanagh, Levin,
Ryan, and Moody, the Supreme Court declined the request for
an advisory opinion because:

1. The questions are stated only in general terms; the request
fails to particularize the potential claims of unconstitutionality.

2. The questions are so broad that any advisory opinion of
the Court would depend for resolution on whatever particular
factual situation the Court would be forced to hypothesize.

3. When the Court has agreed to render an advisory opinion
it has been able to draw on precedents established in adversary
litigation in parallel contexts concerning the constitutional
issue presented. An extensive jurisprudence developed in adver-
sary litigation would guide the Court in rendering an advisory
opinion on the equal protection and due process questions.
There is no history of adversary litigation or jurisprudence so
developed to guide the Court in applying the Headlee limita-
tions on the taxing and appropriation powers. Considering the
complexity of the Headlee Amendment it would be rash to
attempt to formulate a jurisprudence through advisory opin-
ions.

4. The Headlee Amendment gives any taxpayer of the state
standing to bring suit in the Court of Appeals to enforce the
provisions of the amendment. The Supreme Court should not
appear to preempt or preclude such an action by prematurely,
in a non-adversary context and in a factual and jurisprudential
void, prejudging a potential taxpayer action in a proceeding to
which no taxpayer is a party.

5. The Court may be requested to render an advisory opinion

References for Points in Headnotes
[1-4] 16 Am Jur 2d, Constitutional Law §§ 40, 111.

only concerning "the constitutionality of legislation" and then only "after it has been enacted into law" but before its effective date. The request for an advisory opinion also affects HB 4277, the effectiveness of which depends on the Court determining in an advisory opinion that the construction of the amendment by the Legislature in 1979 PA 57 is proper and consistent with and not violative of constitutional limitations. The tie-in with HB 4277 is contrary to the spirit and intendment of the after-enactment limitation on the Court's power to render an advisory opinion. The Constitution provides that the Legislature and the Governor shall participate in the enactment of laws, but does not provide for participation by the Court in that process. A bill which does not become a law unless the Court takes some action has not "been enacted into law" within the meaning of the constitutional provision for advisory opinions.

Request declined.

Justice Williams, joined by Justice Fitzgerald, dissenting, believed that considerations to the contrary are more weighty and worthy. The request certainly concerns a question of law upon a solemn occasion as to the constitutionality of legislation. Whatever the judicial decision on the impact of the Headlee Amendment will be, it will affect state and local financing as long as that provision is the law of this state. The lack of an advisory opinion can paralyze legislative action or encourage erroneous action that when ruled unconstitutional might well be an unrivaled mess to unravel. An advisory opinion, of course, is not definitive, but without one, the Legislature is much less well advised to tackle a fundamental problem of government.

Chief Justice Coleman, dissenting, wrote separately to add perspective to the request before the Court. The Legislature, in implementing the Headlee Amendment, has provided for state assumption of some expenditure presently required of a local unit of government, thus freeing the same amount of money for local purposes. If this provision is found to be unconstitutional, that is, that such funds would not be "paid to" local government within the meaning of the constitutional amendment, a different method of budgeting and appropriating would be necessary.

1. The drafters of the Constitution could hardly have envisioned a more "solemn occasion" for an advisory opinion. The state and all local units of government must provide financially for their governance. The request goes to the bedrock of orderly government. It is in compliance with the procedure required in

the Constitution. The question is: should the Court deny whatever guidance it can give toward an orderly transition to the new constitutional requirements?

2. The questions asked by the Legislature, although broad, can be managed by the Court. As an alternative, the request could be denied for lack of specificity, which would leave latitude for a new request with more discrete questions. The drafters of the amendment would not have intended to foreclose an advisory opinion upon request of the Governor or Legislature by providing for taxpayers' suits in the Court of Appeals.

3. This request is unique for several reasons: 1) There is no background of "intent". A limited group of public leaders formulated the constitutional amendment to limit taxation and the majority of the people voting adopted it. 2) This is the first time that the Legislature has had an opportunity to work under its provisions to provide the financial means for the government to govern within statutory and constitutional limitations. 3) The Governor cannot wait for possibly a year or more to compile the next budget, nor can the Legislature appropriate with any degree of security. 4) The fact that there is no precedent gauging the amendment as implemented is precisely why the Court *should* grant the Legislature's request. Certainly if, after hearing the arguments and reading the briefs, the Court should find the statute unconstitutional, it should be said as soon as possible.

4. The budget and appropriation process must reach a fixed and knowable result. The Legislature cannot budget and appropriate on a speculative basis (at least, not in large amounts). This is particularly true where overall percentages must be met—such as when 41% of the total revenues must be appropriated to local governments and when there is a ceiling on expenditures.

5. The Governor and the Legislature must know what payments to local units of government count under the Headlee Amendment if they are to avoid error and fiscal disarray. The Court should give all possible assistance to the other two branches of government in this unique situation. The least it should do is to make some effort.

### Opinion of the Court

1. Constitutional Law — Advisory Opinion.

  The Supreme Court declined to grant a request by the Legislature for an advisory opinion on the constitutionality of an act

to implement the amendment to the Constitution concerning limits on state spending and on shifting the tax burden because the potential claims of unconstitutionality are not particularized, there is a factual and jurisprudential void, a premature construction of the constitutional amendment may embarrass the right especially reserved by that amendment to the taxpayers to bring actions in the Court of Appeals, and the request in part affects other legislation, the effectiveness of which depends on the Court agreeing to the request and responding in a manner predetermined by the Legislature (Const 1963, art 3, § 8; Const 1963, art 9, §§ 25-34; 1979 PA 57).

DISSENTING OPINION BY WILLIAMS, J.

2. CONSTITUTIONAL LAW — ADVISORY OPINION.

*The request by the Senate for an advisory opinion on the constitutionality of an act to implement the amendment to the Constitution concerning limits on state spending and shifting the tax burden certainly concerns a question of law upon a solemn occasion as to the constitutionality of legislation (Const 1963, art 3, § 8; Const 1963, art 9, §§ 25-34; 1979 PA 57).*

3. CONSTITUTIONAL LAW — ADVISORY OPINION.

*An advisory opinion is not definitive, but without one the Legislature is much less well advised to tackle a fundamental problem of government; the lack of an advisory opinion on an act to implement a constitutional amendment which affects state and local financing can paralyze legislative action or encourage erroneous action that when ruled unconstitutional might well be an unrivaled mess to unravel (Const 1963, art 3, § 8; Const 1963, art 9, §§ 25-34; 1979 PA 57).*

DISSENTING OPINION BY COLEMAN, C.J.

4. CONSTITUTIONAL LAW — ADVISORY OPINION — HEADLEE AMENDMENT.

*The Supreme Court should give all possible assistance to the other two branches of government in implementing the constitutional amendment to limit taxation, which was initiated by a petition of the people, by granting a request by the Senate for an advisory opinion or at least denying the request for lack of specificity, which would leave latitude for a new request with more discrete questions; the Governor and the Legislature must know what payments to local units of government are meant to count under the constitutional amendment if they are to avoid error and fiscal disarray (Const 1963, art 3, § 8; Const 1963, art 9, §§ 25-34; 1979 PA 57).*

Per Curiam. The Legislature has requested an advisory opinion concerning its construction of a provision of the Headlee Amendment.[1] The amendment provides in part:

"The state is prohibited from requiring any new or expanded activities by local governments without full state financing, from reducing the proportion of state spending in the form of aid to local governments, or from shifting the tax burden to local government",[2]

and:

"The proportion of total state spending paid to all units of Local Government, taken as a group, shall not be reduced below that proportion in effect in fiscal year 1978-79."[3]

1979 PA 57 "implements" the latter provision (§ 30) and provides:

"If the state assumes the financing and administration of a function after December 22, 1978, which was previously performed by a local unit of government, the state payments to this function shall be counted as state spending paid to local units of government."[4]

A Senate concurrent resolution requests this Court to render an advisory opinion

"on the following questions of law:
"1. Is the construction of a situation in which the state assumes the financing and administration of a function after December 22, 1978, which was previously performed by 'local units of government' to be 'state spending paid to local units of government' as stated in

---

[1] Const 1963, art 9, §§ 25-34.

[2] *Id.,* § 25.

[3] *Id.,* § 30.

[4] 1979 PA 57, § 1a.

section 1a of House Bill No. 4700 [1979 PA 57] a proper construction for purposes of section 30 of article 9 of the state constitution of 1963?

"2. Does section 1a of House Bill No. 4700 violate either the 'Equal protection' or 'Due process' provisions of either the Federal or State constitutions as that section applies to 'local units of government'?"

An appropriation bill which has been enacted by the Legislature, but not signed by the Governor, has been called to our attention because it refers to this legislation. It (HB 4277) provides that some of its provisions shall not take effect unless "the supreme court determines in an advisory opinion that the construction" set forth in § 1a of 1979 PA 57 "is proper and consistent with section 30" and does not violate the Due Process or Equal Protection Clauses.[5]

This Court declines to give the advisory opinion requested because:

1) The questions are stated only in general terms; the request fails to particularize the claims of unconstitutionality:

"As suggested by the 'important questions of law' requirement, the request for an advisory opinion must 'particularize any claims of unconstitutionality'. *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 484; [208 NW2d 469 (1973);] *Advisory Opinion re Constitutionality of 1974 PA 242,* 394 Mich 41, 53; 228 NW2d 772 (1975). A request stated too broadly cannot be considered. *Advisory Opinion re Constitutionality of 1974 PA 272,* 393 Mich 916 (1975)." *Request for*

_____

[5] HB 4277, § 44, which provides:

"Sections 36 and 37 shall not take effect unless the supreme court determines in an advisory opinion that the construction of section 1a in House Bill No. 4700 of the 1979 regular session of the legislature is proper and consistent with section 30 of article 9 of the state constitution of 1963 and does not violate the due process or equal protection provisions of the federal constitution or the state constitution of 1963."

*Advisory Opinion on Constitutionality of 1975 PA 227,*
395 Mich 148, 149; 235 NW2d 321 (1975).

2) The questions "are so broad that any advisory
opinion of the Court would depend for resolution
on whatever particular factual situations the
Court would be forced to hypothesize".[6]

3) When this Court has heretofore agreed to
render an advisory opinion it has been able to
draw on precedents established in adversary litiga-
tion in parallel contexts concerning the constitu-
tional issue presented. An extensive jurisprudence
developed in adversary litigation would guide this
Court in rendering an advisory opinion on the
Equal Protection and Due Process questions. There
is no history of adversary litigation or jurispru-
dence so developed to guide the Court in applying
the Headlee limitations on the taxing and appro-
priation powers. Considering the complexity of the
Headlee Amendment we feel it would be rash to
attempt to formulate a jurisprudence through ad-
visory opinions.

4) The Headlee Amendment states that "[a]ny
taxpayer of the state shall have standing to bring
suit in the Michigan State Court of Appeals to
enforce the provisions of Sections 25 through 31,
inclusive, of this Article".[7] This Court should not

---

[6] *Advisory Opinion re Constitutionality of 1974 PA 272,* 393 Mich
916 (1975).

Similarly, see *Request for Advisory Opinion on Constitutionality of
1978 PA 33,* 402 Mich 968 (1978), declining to render an advisory
opinion on legislation concerning pornography where this Court said:

"The Court's traditional role is to resolve only actual controversies
where the stakes of the parties are committed and the issues devel-
oped in adversary proceedings. Const 1963, art 3, § 8 is 'a departure
from the historic judicial scheme' that was intended to be used
'sparingly'. *Request for Advisory Opinion on Constitutionality of 1977
PA 108,* 402 Mich 83, 86 [260 NW2d 436] (1977). An advisory opinion
is not precedentially binding on the Court. It represents only the
opinions of the parties signatory framed in a factual void."

[7] Const 1963, art 9, § 32.

appear to preempt or preclude such an action by prematurely, in a non-adversary context and in a factual and jurisprudential void, prejudging a potential taxpayer action in a proceeding to which no taxpayer is a party.

This Court, in responding to a prior request for an advisory opinion concerning a legislative construction of the Headlee Amendment,[8] declared that "it would be an inappropriate exercise of its discretion"[9] to provide an advisory opinion.

5) The Court may be requested to render an advisory opinion only concerning "the constitutionality of legislation" and then only "after it has been enacted into law" but before its effective date.[10] Section 1a of 1979 PA 57 is tied in with § 44 of HB 4277, the effectiveness of which depends on this Court "determining" in an advisory opinion that the construction in § 1a is proper and consistent with and not violative of constitutional limitations.[11] The tie-in with HB 4277 is contrary to the spirit and intendment of the after-enactment limitation on this Court's power to render an advisory opinion. The Constitution provides that the Legislature and the Governor shall participate in the enactment of laws, and does not provide for participation by this Court in that process. A bill which does not become a law unless this Court takes some action has not "been enacted into law" within the meaning of this constitutional provision.

[8] The request concerned 1978 PA 529 and its construction of the second paragraph of Const 1963, art 9, § 31 added by the Headlee Amendment and the amendment of Const 1963, art 9, § 6 by the Headlee Amendment.

[9] *Request for Advisory Opinion on Constitutionality of 1978 PA 529,* 405 Mich 1001 (1979). Similarly, see the order following thereon which denied a similar request by the Governor.

[10] Const 1963, art 3, § 8.

[11] See fn 5, *supra.*

Accordingly, because the potential claims of unconstitutionality are not particularized, because there is a factual and jurisprudential void, because a premature construction of the Headlee Amendment may embarrass the right especially reserved by that amendment to taxpayers to bring actions in the Court of Appeals, and because the request in part affects legislation such as HB 4277, the effectiveness of which depends on this Court agreeing to this request and responding in a manner predetermined by the Legislature, a majority of this Court is unable, being fully mindful of the importance of the questions involved, and with due respect to the Legislature, to grant the request to render an advisory opinion.

As stated in declining an earlier request for an advisory opinion: "The Court stands ready to examine carefully and to resolve expeditiously any controversy that comes to it out of application of [the Headlee Amendment and legislation pertinent thereto] in a factual setting."[12]

Kavanagh, Levin, Ryan, and Blair Moody, Jr., JJ., concurred.

Williams, J. *(dissenting).* We respectfully disagree with the decision of the majority of our colleagues not to consider the request of the Senate for an opinion on HB 4700.

*Ab initio,* we understand and respect the weighty considerations that moved them to their opinion. However, we believe the considerations to the contrary are more weighty and worthy.

The request certainly concerns a "question[s] of law upon [a] solemn occasion[s] as to the constitu-

---

[12] *Request for Advisory Opinion on Constitutionality of 1978 PA 33, supra.*

tionality of legislation". Whatever the judicial decision on the impact of the so-called Headlee Amendment will be, it will affect state and local financing as long as that provision is the law of this state.

The lack of an advisory opinion can paralyze legislative action or encourage erroneous action that, if ruled unconstitutional, might well be an unrivaled mess to unravel. An advisory opinion, of course, is not definitive, but without one, the Legislature is much less well-advised to tackle a fundamental problem of government.

In our opinion both law and wisdom as well as comity require us to accept the Senate request for an advisory opinion.

FITZGERALD, J., concurred with WILLIAMS, J.

COLEMAN, C.J. *(dissenting)*.

I

I write separately to add perspective to the request before us.

Simply stated, this Court has been asked by the Legislature to issue an advisory opinion[1] as to whether the Treasurer of the State of Michigan must send a check or otherwise physically pay in cash to a local unit of government the percentage of state revenue required under what is known as the Headlee constitutional amendment (Headlee)[2] or if the Legislature can, within the meaning of

---

[1] "Either house of the legislature or the governor may request the opinion of the supreme court on important questions of law upon solemn occasions as to the constitutionality of legislation after it has been enacted into law but before its effective date." Const 1963, art 3, § 8.

[2] Const 1963, art 9, §§ 25-34.

§ 30 of Headlee[3] provide for state assumption of some expenditure presently required of a local unit, thus freeing the same amount of money for local purposes.

1979 PA 57 which implements Headlee provides in § 1a,[4] *inter alia,* for the latter method.

If this section is found to be unconstitutional— that is, such funds would not be "paid to" local government within the meaning of Headlee—a different method of budgeting and appropriating would be necessary. Budgeting procedures for 1980-1981 already are in progress. The Legislature usually commences its consideration of that budget after presentation in January of any given year.

Justice WILLIAMS is accurate in his statement that the lack of an advisory opinion could encourage erroneous action which, if ruled unconstitutional "might well be an unrivaled mess to unravel".

## II

This is exquisitely a "solemn occasion[s] as to the constitutionality of legislation". The drafters of the constitution could hardly have envisioned a more "solemn occasion". The state and all local units of government must provide financially for their governance. The request goes to the bedrock of orderly government. It is in compliance with the procedure required in 1963 Const, art 3, § 8.

To illustrate the problem, assume that the state

---

[3] "The proportion of total state spending *paid* to all units of Local Government, taken as a group, shall not be reduced below that proportion in effect in fiscal year 1978-79." (Emphasis added.)

[4] "If the state assumes the financing and administration of a function after December 22, 1978, which was previously performed by a local unit of government, the state payments to this function shall be counted as state spending paid to local units of government." 1979 PA 57, § 1a.

has $100 of costs to meet. By present calculations, the Headlee amendment requires that out of every dollar of state revenues the local governments receive approximately 41 cents (41%) and the state receives approximately 59 cents (59%). Thus, in order to fund $100 of state costs, there must exist approximately $169 of revenue (59% of $169.49 = $100).

As stated, 1979 PA 57, § 1a, provides that the state may assume a dollar of local costs and count that dollar as "paid to" the local government— part of the 41% of revenues. Therefore, if the Legislature should rely upon § 1a and proceed to carry out some of its programs for relieving local funds and if § 1a were later found for some reason to be unconstitutional, for every dollar appropriated (for that purpose) the state would have to find another 69 cents. That might not even be possible under Headlee limitations.

It is foreseeable that a web of state and local budgets would have to be unsnarled if indeed they could be.

The question is: Should we deny whatever guidance we can give towards an orderly transition into the new constitutional requirements to give effect to the "will of the people"?

III

It is my opinion that the questions asked by the Legislature, although broad, can be managed by this experienced Court. As an alternative, we could deny the request for lack of specificity and leave latitude for a new request with more discrete questions. However, the majority apparently has refused to give any guidance aside from a case in controversy. I believe that neither Mr. Headlee

nor other drafters of the amendment intended to foreclose an advisory opinion upon request of the Governor or Legislature by providing for taxpayer's suits in the Court of Appeals.

IV

Under some circumstances, I would agree with a denial of a request for an advisory opinion.

However, this situation is unique for several reasons:

1. Neither the Legislature nor the Governor formulated this constitutional amendment. There is no background of "intent". A limited group of leaders, responding to tax-weary citizens and to the perceived need to limit taxation, formulated the constitutional amendment. The majority of the people voting adopted what is now termed the Headlee Amendment.

2. This is the first time that the Legislature has had an opportunity to work under its provisions. It must work with billions of dollars and provide for the operation of its own and the other branches of government. In short, it must provide means for the government to govern within statutory and constitutional limitations.

3. The Governor cannot wait for possibly a year or more to compile the next budget, nor can the Legislature appropriate with any degree of security. Although it is true that an advisory opinion is not precedential, representing only the thinking of the separate justices, it could prove helpful by giving some direction to the rudderless ship of state on its first voyage under this new constitutional amendment as implemented by § 1a. In the past, we have been able to apply accepted constitutional concepts to new laws even if to a limited

degree and without the precise factual record of a case in controversy. Some guidance is needed imminently, and I believe the Michigan Supreme Court to be capable of acting within a reasonable time.

4. The fact that there is no precedent gauging the amendment (as implemented) is precisely why I believe we *should* grant the Legislature's request. Certainly if, after hearing the arguments and reading the briefs, we should find § 1a unconstitutional, it should be said as soon as possible—not after appropriations or budgets have been set in stone.

Some precedent may eventually be forthcoming from some taxpayer's suit as yet unfiled—but government cannot wait. It will continue to function in some manner even though it may have to undo much that will have been done. However, the results of such a fiscal tangle could be catastrophic in scope.

## V

In summary, the executive-legislative budget and appropriation process must reach a fixed and knowable result. The Legislature cannot budget and appropriate on a speculative basis (at least, not in large amounts). This is particularly true where overall percentages must be met—such as when 41% of the total revenues must be appropriated to local governments and when there is a ceiling on expenditures.

For example, if the Legislature appropriates $100,000,000 to local units to finance a specific function which had previously been paid in the same amount by the local units and, according to § 1a, calculates this payment as part of the pay-

ment to local government; and if a year later the
Court holds that the $100,000,000 cannot be cred-
ited to the 41%, the state would "lose" $100,000,-
000. The money would have been spent. It would
not count on the 41%. Moreover, additional money
(about $69,000,000) would have to be found to be
"paid to" the local units from funds the state
would not have.

The Governor and the Legislature must know
what payments to local units of government count
under Headlee if they are to avoid error and fiscal
disarray.

It is my conviction that this Court should give
all possible assistance to the other two branches of
government in this unique situation. The least we
should do is to make some effort.

For these reasons, I either would have granted
the Legislature's request for an advisory opinion
or I would have left the door open to a subsequent
request either from the Legislature or Governor in
a good-faith effort to render aid on such an exqui-
sitely "solemn occasion".