MICHIGAN EDUCATION ASSOCIATION v
SUPERINTENDENT OF PUBLIC INSTRUCTION

Docket No. 267714. Submitted July 12, 2006, at Lansing. Decided August
1, 2006, at 9:00 a.m.

The Michigan Education Association brought an action in the
Ingham Circuit Court against the Superintendent of Public In-
struction and other state officers and departments. The plaintiff
alleged, among other things, that the public school academies (also
called "charter schools") chartered by Bay Mills Community
College are not public schools and, therefore, the payment of
public funds to those academies violates Const 1963, art 8, § 2,
which prohibits public funding for nonpublic schools. The court,
Joyce Draganchuk, J., allowed the Coalition for Educational
Choice to intervene as a defendant. The court subsequently
dismissed for lack of standing all of the plaintiff's claims except
that concerning public funding of the academies. The court found
standing for this allegation on the basis that the plaintiff was a
nonprofit organization contesting the expenditure of state funds.
The court, however, determined that the academies were public
schools entitled to public funds. The plaintiff appealed.

The Court of Appeals *held*:

1. The plaintiff did not provide sufficient evidence to satisfy
the constitutional elements required for standing, as set forth in
*Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608
(2004). Specifically, the plaintiff neither alleged nor suffered an
injury in fact; the plaintiff did not present evidence that it suffered
an invasion of a legally recognized interest that is concrete and
particularized and is actual or imminent, not hypothetical or
conjectural. The plaintiff also did not provide evidence establish-
ing a causal connection between the alleged injury and the
challenged conduct, asserting simply that public funding of the
academies reduces the wages of the plaintiff's members. Further-
more, the plaintiff provided no substantive evidence that the
alleged harm could likely be redressed by a favorable decision.

2. While the plaintiff argues that, under MCL 600.2041(3) and
MCR 2.201(B)(4), it has statutorily conferred standing to chal-
lenge the unconstitutional expenditure of public funds for nonpub-

lic schools, the Legislature cannot expand the judicial power by conferring standing on a party that does not otherwise meet the constitutional test for standing. To the extent that MCL 600.2041(3) and MCR 2.201(B)(4) confer standing broader than the limits imposed by the Michigan Constitution, they are unconstitutional.

3. Because the plaintiff did not have standing to challenge the expenditure of state funds under the facts before the Court, the Court did not reach the substantive issue whether the academies are public schools eligible for public funding.

Appeal dismissed.

ACTIONS — CONSTITUTIONAL LAW — STANDING CONFERRED BY STATUTE OR COURT RULE.

The statute and court rule concerning actions by nonprofit corporations to prevent the illegal expenditure of state funds or to test the constitutionality of a statute relating to such an expenditure are unconstitutional to the extent that they confer standing broader than the limits imposed by the Michigan Constitution, as those limits are set forth in *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608 (2004) (MCL 600.2041[3]; MCR 2.201[B][4]).

*Lee & Clark* (by *Suzanne Krumholz Clark*) and *Arthur R. Przybylowicz* for the Michigan Education Association.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *D.J. Pascoe*, Assistant Attorney General, for the Superintendent of Public Instruction, the Department of Education, the State Board of Education, the State Treasurer, and the Department of Treasury.

*Dykema Gossett PLLC* (by *Richard J. Landau, Leonard C. Wolfe,* and *Jason T. Hanselman*) for the Coalition for Educational Choice.

Amicus Curiae:

*Patrick J. Wright* for the Mackinac Center for Public Policy.

Before: Donofrio, P.J., and O'Connell and Servitto, JJ.

Donofrio, P.J. Plaintiff appeals as of right the trial court's order granting summary disposition to defendants. This case involves a challenge to the authority of Bay Mills Community College (BMCC) to authorize "public school academies" also referred to as "charter schools." Because we cannot conclude that plaintiff has standing to challenge the expenditure of state funds under the facts before us, we do not reach the substantive issue whether the public school academies BMCC has chartered are considered public schools and are eligible for public funding. We dismiss this appeal for lack of standing.

## I. FACTS

BMCC is a land grant school recognized under the federal Tribally Controlled College or University Assistance Act and is accredited by the North Central Association of Colleges and Schools. According to its charter, BMCC's district consists of the state of Michigan. BMCC's charter provides its board with the authority to issue contracts to create chartered public schools as provided under Michigan law. The record reflects that since December 2000, BMCC has chartered and opened 32 public school academies.

BMCC is run by a nine-member board of regents. Five of those regents are selected from the Bay Mills Indian Community Executive Council and serve two year terms. One is the business manager or representative of the Sault Ste. Marie Tribe of Chippewa Indians, one is the business manager or representative of the Grand Traverse Band of Ottawa/Chippewa Indians, one is the business manager or representative of the

Little Traverse Bay Bands of Odawa Indians, and one is the executive director of the Inter-Tribal Council of Michigan, Inc. Additionally, there is one nonvoting member, the student body president of BMCC.

Plaintiff Michigan Education Association (MEA) represents approximately 136,000 members throughout the state of Michigan, including about 70,000 grade K-12 instructors. Testimony reveals that each member pays approximately $600 a year in dues to the MEA. In the instant case, plaintiff brought suit alleging, among other things, that BMCC's public chartered academies are not public schools and, therefore, the payment of public funds to BMCC's public chartered academies violates the Michigan Constitution's provision against public funding for nonpublic schools. The trial court dismissed all but the public-funding count for lack of standing. The trial court found standing for this allegation on the basis of plaintiff meeting the legislatively conferred standing granted for a nonprofit organization contesting the expenditure of state funds. The trial court then ruled that the schools in question were public schools entitled to public funds. This appeal followed.

## II. ANALYSIS

"Whether a party has legal standing to assert a claim [is] a question of law that we review de novo." *Heltzel v Heltzel*, 248 Mich App 1, 28; 638 NW2d 123 (2001). "The question of jurisdiction is always within the scope of this Court's review." *Walsh v Taylor*, 263 Mich App 618, 622; 689 NW2d 506 (2004).

### A. CONSTITUTIONAL STANDING

In this case, defendants argue that plaintiff does not meet the constitutional test required for standing and

that the Legislature may not statutorily confer standing on a party that does not otherwise meet the constitutional requirements for standing. Plaintiff counters that, as a domestic nonprofit organization challenging the illegal expenditure of state funds, it has statutorily granted standing to institute this suit.

We begin our analysis with the observation that our Supreme Court has indeed repeatedly endorsed the test for standing articulated by the United States Supreme Court in *Lujan v Defenders of Wildlife*, 504 US 555, 560-561; 112 S Ct 2130; 119 L Ed 2d 351 (1992). See *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 628-629; 684 NW2d 800 (2004); *Crawford v Dep't of Civil Service*, 466 Mich 250, 258; 645 NW2d 6 (2002); *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 739-740; 629 NW2d 900 (2001). In *Nat'l Wildlife*, our Supreme Court stated that, at a minimum, standing requires the following three elements:

> "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . traceable to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " [*Nat'l Wildlife, supra* at 628-629, quoting *Lee, supra* at 739, quoting *Lujan, supra* at 560-561.]

Thus, ordinarily, plaintiff must meet the constitutional minimum criteria for standing in order to have standing. First, plaintiff has neither alleged nor suffered the required "injury in fact." Plaintiff presented no evidence that it suffered an invasion of a legally

recognized interest that is actual or imminent, not hypothetical or conjectural. Specifically, our review of the record reveals that plaintiff provides nothing beyond bare assertions that the public funding of BMCC's charter schools injures plaintiff's members, and does not identify an injury that is " 'concrete and particularized,' " and " ' "actual or imminent." ' " *Nat'l Wildlife, supra* at 628, quoting *Lee, supra* at 739, quoting *Lujan, supra* at 560. Any alleged injury to plaintiff is based on conjecture and speculation.

Second, plaintiff has provided us nothing more than the simple assertion that BMCC's public funding reduces plaintiff's members' wages without any supporting evidence. While we can envision a scenario in the abstract in which BMCC's public funding does indirectly or even directly reduce the wages or wage increases of plaintiff's members, it takes more than imagination to establish the required causation element of standing. *Nat'l Wildlife, supra* at 628-629, quoting *Lee, supra* at 739, quoting *Lujan, supra* at 560.

Third, plaintiff has provided no substantive evidence that the alleged harm could even be " ' "redressed by a favorable decision." ' " *Nat'l Wildlife, supra* at 629, quoting *Lee, supra* at 739, quoting *Lujan, supra* at 561. Plaintiff offers no evidence to show that it is " ' "likely," ' " or even merely " ' "speculative," ' " that, if all public funds to BMCC schools are cut off, plaintiff's members' salaries will increase. *Nat'l Wildlife, supra* at 629, quoting *Lee, supra* at 739, quoting *Lujan* at 561. There is absolutely no way to predict with any degree of certainty how the public dollars earmarked for BMCC schools would be appropriated if BMCC funding was discontinued. Plaintiff has provided no evidence whatsoever that these monies would be directly funneled into plaintiff's members' salaries. More-

over, there is another possible scenario. Even if plaintiff were to prevail, the BMCC schools might switch to a different chartering organization, such as a school district or local community college, where they would again be eligible for public funding. Plaintiff has not provided, and we cannot ascertain, any means of redress by a favorable decision of this Court. *Nat'l Wildlife, supra* at 629.

With myriad different scenarios possible, and not a shred of real evidence provided by plaintiff regarding any of the elements of standing, we must relegate its arguments to those of mere speculation, hypothesis, and conjecture. Mere hypothetical or conjectural injuries do not satisfy the constitutional requirements for standing. *Nat'l Wildlife, supra* at 628, quoting *Lee, supra* at 739, quoting *Lujan, supra* at 560. Therefore, plaintiff has not provided sufficient evidence to satisfy the constitutional elements required for standing. *Nat'l Wildlife, supra* at 628-629.

### B. STATUTORILY CONFERRED STANDING

In *Nat'l Wildlife,* our Supreme Court extensively discussed standing requirements and specifically addressed whether the Legislature can confer standing by statute. *Nat'l Wildlife, supra* at 614-615. Our Supreme Court counseled that judicial power, while not specifically defined by the Michigan Constitution, "is distinct from both the legislative and executive powers." *Id.* at 614. The Court elaborated, stating:

> Perhaps the most critical element of the "judicial power" has been its requirement of a genuine case or controversy between the parties, one in which there is a real, not a hypothetical, dispute, *Muskrat v United States*, 219 US 346; 31 S Ct 250; 55 L Ed 246 (1911), and one in which the plaintiff has suffered a "particularized" or per-

sonal injury. *Massachusetts v Mellon*, 262 US 447, 488; 43 Ct 597; [67 L Ed 1078] (1923). Such a "particularized" injury has generally required that a plaintiff must have suffered an injury distinct from that of the public generally. *Id*. [*Id*. at 615.]

The Court indicated that without the particularized injury requirement, "there would be little that would stand in the way of the judicial branch becoming intertwined in every matter of public debate." *Id*. It opined that those claims that did not meet the particularized injury requirement would inappropriately involve the judiciary in "deciding public policy, not in response to a real dispute in which a plaintiff had suffered a distinct and personal harm, but in response to a lawsuit from a citizen who had simply not prevailed in the representative processes of government." *Id*. It went on to explain that this "expanded power" would have dire consequences, because it would grant the most power to the least accountable branch of the government. *Id*. at 615-616. The *Nat'l Wildlife* Court condemned the use of "the judicial branch as a forum for giving parties who were unsuccessful in the legislative and executive processes simply another chance to prevail." *Id*. at 616.

After engaging in a thorough analysis of both federal and state law, the *Nat'l Wildlife* Court ultimately opined that, but for a few enumerated exceptions,[1] the definitions, of judicial power in the United States and Michigan constitutions are identical and that both require an actual case or controversy in order to establish standing. *Nat'l Wildlife, supra* at 624-625, 627-628.

---

[1] The exceptions listed included the ability of the Michigan Supreme Court to offer advisory opinions, the ability of taxpayers to sue to enforce the Headlee Amendment, and the ability of any citizen of the state to bring injunctive or mandamus proceedings to enforce state civil service laws. *Nat'l Wildlife, supra* at 624-625.

It was the position of our Supreme Court that to allow the Legislature to expand the powers of the judiciary by conferring standing on a party that does not otherwise meet the constitutional test for standing violates the separation of powers because it defies the long-held historical definition of "judicial power." *Id.* at 615-616. In the end, however, the Court ultimately found it unnecessary to reach the issue of statutorily conferred standing because it found that the plaintiffs met the constitutional requirements for standing without regard to the statute involved. *Id.* at 632.

Our Supreme Court again discussed the issue of statutorily conferred standing in *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286; 715 NW2d 846 (2006). In *Federated Ins,* the issue was whether the Attorney General had authority to intervene to appeal a judgment of the Court of Appeals on behalf of the people and a state agency when the named losing parties did not themselves seek review in the Supreme Court, which implicated the constitutional authority of the judiciary. *Id.* at 288, 290. The Attorney General argued that he had authority to intervene on the basis of two statutes, MCL 14.101 and MCL 14.28. *Id.* at 293-294. While both relying on and further expanding its discussion of standing in *Nat'l Wildlife,* our Supreme Court held that the Attorney General had no authority to intervene to appeal the Court of Appeals judgment under these statutes because a justiciable controversy no longer existed in light of the fact that the Attorney General did not represent an "aggrieved party." *Id.* at 290-295, 297.

In particular, the Supreme Court held:

> To the extent one might read MCL 14.101 or MCL 14.28 as allowing the Attorney General to prosecute an appeal from a lower court ruling without the losing party below

also appealing, and without the Attorney General himself being or representing an aggrieved party, the statutes would exceed the Legislature's authority because, except where expressly provided, this Court is not constitutionally authorized to hear nonjusticiable controversies. *Nat'l Wildlife Federation, supra* at 614-615. To give these statutes such a reading would contravene an operative presumption of this Court that we presume constitutional intent on the part of the Legislature. See *Phillips v Mirac, Inc,* 470 Mich 415, 422, 685 NW2d 174 (2004). [*Federated Ins, supra* at 294-295.]

This Court has also discussed the issue of statutorily conferred standing in *Michigan Citizens for Water Conservation v Nestlé Waters North America Inc,* 269 Mich App 25; 709 NW2d 174 (2005). In *Michigan Citizens,* the issue presented was whether the plaintiffs had standing to bring suit under MCL 324.1701(1) when they could not otherwise demonstrate that they suffered a particularized injury and could not otherwise establish constitutional standing under the test stated in *Lee. Id.* at 85. While the *Michigan Citizens* panel members did not ultimately agree regarding the Legislature's grant of standing under the specific facts of that case, *id.* at 112-114 (opinions of MURPHY, P.J., and WHITE, J.), we find Judge SMOLENSKI's analysis in the lead opinion instructive. Judge SMOLENSKI counseled as follows:

Although the majority in [*Nat'l Wildlife*] declined to specifically examine the constitutionality of MCL 324.1701(1), it clearly determined that the Legislature was without the authority to expand standing beyond the limits imposed by Michigan's constitution. Because the Court in [*Nat'l Wildlife*] intentionally took up and discussed the Legislature's authority to confer broader standing, its decision on that matter is binding on this Court. *People v Higuera,* 244 Mich App 429, 437; 625 NW2d 444 (2001). Consequently, we must hold that, to the extent that it

confers standing broader than the limits imposed by Michigan's constitution, as determined by *Lee* and [*Nat'l Wildlife*], MCL 324.1701(1) is unconstitutional. [*Id.* at 87.]

Here, plaintiff argues that it has standing to challenge the expenditure of public funds pursuant to the Michigan Constitution's provision forbidding the expenditure of public funds on nonpublic schools, Const 1963, art 8, § 2, by way of MCL 600.2041(3) and MCR 2.201(B)(4). Const 1963, art 8, § 2 states:

> The legislature shall maintain and support a system of free public elementary and secondary schools as defined by law. Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin.
>
> No public monies or property shall be appropriated or paid or any public credit utilized, by the legislature or any other political subdivision or agency of the state directly or indirectly to aid or maintain any private, denominational or other nonpublic, pre-elementary, elementary, or secondary school. No payment, credit, tax benefit, exemption or deductions, tuition voucher, subsidy, grant or loan of public monies or property shall be provided, directly or indirectly, to support the attendance of any student or the employment of any person at any such nonpublic school or at any location or institution where instruction is offered in whole or in part to such nonpublic school students. The legislature may provide for the transportation of students to and from any school.

MCL 600.2041(3) provides in relevant part that "an action to prevent the illegal expenditure of state funds or to test the constitutionality of a statute relating thereto may be brought in the name of a domestic nonprofit corporation organized for civic, protective, or improvement purposes . . . ." MCR 2.201(B)(4)(a) likewise provides that an action to prevent the illegal expenditure of state funds or to test the constitutionality of a statute in this regard may be brought by a

domestic nonprofit corporation organized for civic, protective, or improvement purposes.

It is plaintiff's argument that state funding for schools chartered by BMCC violates Const 1963, art 8, § 2, and therefore it, as a nonprofit organization, has standing to sue on behalf of the interests of its members if the members would have standing to sue individually, by operation of MCL 600.2041(3) and MCR 2.201(B)(4). *Nat'l Wildlife, supra* at 629; *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 90; 662 NW2d 387 (2003). It is beyond reasonable dispute that plaintiff's membership includes Michigan taxpayers. Thus, were plaintiff able to meet the constitutional requirements for standing, we would conclude that plaintiff has standing to sue to indicate its taxpayer-members' interests in challenging an expenditure of state funds that allegedly violate the specific constitutional bar on state funding of nonpublic schools. But we are required to follow our Supreme Court's decision on the matter of the Legislature's authority to confer broader standing. *Higuera, supra* at 437. We have clearly determined that plaintiff cannot establish the constitutional elements for standing. Consequently, we hold that to the extent that MCL 600.2041(3) and MCR 2.201(B)(4) confer standing broader than the limits imposed by Michigan's constitution, as determined by *Lee* and *Nat'l Wildlife*, MCL 600.2041(3) and MCR 2.201(B)(4) are unconstitutional.

### III. CONCLUSION

Plaintiff lacks standing because it has no claim of an actual, particularized injury. To the extent that MCL 600.2041(3) and MCR 2.201(B)(4) confer standing broader than the limits imposed by Michigan's constitution, they are unconstitutional and do not confer

standing on plaintiff to bring suit. Because we cannot conclude that plaintiff has standing to challenge the expenditure of state funds under the facts before us, we do not reach the substantive issue whether the public academies BMCC has chartered are considered public schools and are eligible for public funding.

Dismissed.