# STATE OF MICHIGAN

# COURT OF APPEALS

COUNCIL OF ORGANIZATIONS AND
OTHERS FOR EDUCATION ABOUT
PAROCHIAID, AMERICAN CIVIL LIBERTIES
UNION OF MICHIGAN, MICHIGAN PARENTS
FOR SCHOOLS, 482FORWARD, MICHIGAN
ASSOCIATION OF SCHOOL BOARDS,
MICHIGAN ASSOCIATION OF SCHOOL
ADMINISTRATORS, MICHIGAN
ASSOCIATION OF INTERMEDIATE SCHOOL
ADMINISTRATORS, MICHIGAN SCHOOL
BUSINESS OFFICIALS, MICHIGAN
ASSOCIATION OF SECONDARY SCHOOL
PRINCIPALS, MIDDLE CITIES EDUCATION
ASSOCIATION, MICHIGAN ELEMENTARY
AND MIDDLE SCHOOL PRINCIPALS
ASSOCIATION, KALAMAZOO PUBLIC
SCHOOLS, and KALAMAZOO PUBLIC
SCHOOLS BOARD OF EDUCATION,

FOR PUBLICATION
October 16, 2018
9:05 a.m.

Plaintiffs-Appellees,

v

No. 343801
Court of Claims
LC No. 17-000068-MB

STATE OF MICHIGAN, GOVERNOR,
DEPARTMENT OF EDUCATION, and
SUPERINTENDENT OF PUBLIC
INSTRUCTION,

Defendants-Appellants.

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

MURPHY, P.J.

In this appeal, we are called upon to judge whether MCL 388.1752b, which allocates money from the state's general fund "to reimburse actual costs incurred by nonpublic schools in complying with a health, safety, or welfare requirement mandated by a law or administrative rule of this state[,]" violates Const 1963, art 8, § 2, which addresses the topic of education and prohibits the Legislature from appropriating public monies to aid nonpublic schools. On the

-1-

strength of the Michigan Supreme Court's construction of Const 1963, art 8, § 2, in *Traverse City Sch Dist v Attorney General*, 384 Mich 390; 186 NW2d 9 (1971), and *Advisory Opinion re Constitutionality of 1974 PA 242*, 394 Mich 41; 228 NW2d 772 (1975), we hold that, without offending Const 1963, art 8, § 2, the Legislature may allocate public funds to reimburse nonpublic schools for actual costs incurred in complying with state health, safety, and welfare laws. But only if the action or performance that must be undertaken in order to comply with a health, safety, or welfare mandate (1) is, at most, merely *incidental* to teaching and providing educational services to private school students (non-instructional in nature), (2) does not constitute a *primary* function or element necessary for a nonpublic school to exist, operate, and survive, and (3) does not involve or result in excessive religious entanglement. As we will elaborate upon later in this opinion, fitting cleanly within these criteria, as but one example, is a nonpublic school's payment to cover "criminal background check fees," which are identified in MCL 388.1752b(10) as reimbursable actual costs. The Court of Claims ruled, effectively, that MCL 388.1752b is unconstitutional on its face, meaning that under no set of circumstances is the statute constitutionally sound in relation to Const 1963, art 8, § 2. Given our example to the contrary, we reverse the ruling of the Court of Claims and remand for an examination, under the proper criteria outlined herein, of each of the "actual costs" for which a nonpublic school may be reimbursed under the challenged legislation. Furthermore, the Court of Claims, in light of its ruling, declined to address plaintiffs' contention that MCL 388.1752b also violates Const 1963, art 4, § 30, which provides that "[t]he assent of two-thirds of the members elected to and serving in each house of the legislature shall be required for the appropriation of public money or property for local or private purposes." This constitutional challenge must also be entertained by the Court of Claims on remand.

## I. BACKGROUND

### A. MCL 388.1752b

The statute at issue, MCL 388.1752b, was first enacted by the Legislature pursuant to 2016 PA 249 and made effective October 1, 2016. Pursuant to 2017 PA 108, the Legislature amended MCL 388.1752b, effective July 14, 2017, making some substantive changes to the statute. Under the amended version of the statute,[1] it allocates general fund money 'to reimburse actual costs incurred by nonpublic schools in complying with a health, safety, or welfare requirement mandated by a law or administrative rule of this state." MCL 388.1752b(1). With respect to the Legislature's characterization of the appropriated funds, they "are for purposes related to education, are considered to be incidental to the operation of a nonpublic school, are noninstructional in character, and are intended for the public purpose of ensuring the health, safety, and welfare of the children in nonpublic schools and to reimburse nonpublic schools for costs described in this section." MCL 388.1752b(7). Additionally, the funds allocated under the

---

[1] We note that the Legislature again amended MCL 388.1752b pursuant to 2018 PA 265, effective June 28, 2018. However, the new changes only concern some dollar figures, the alteration of applicable fiscal years, and the carrying over of unexpended funds from previous years.

statute "are not intended to aid or maintain any nonpublic school, support the attendance of any student at a nonpublic school, employ any person at a nonpublic school, support the attendance of any student at any location where instruction is offered to a nonpublic school student, or support the employment of any person at any location where instruction is offered to a nonpublic school student." MCL 388.1752b(8).

The Department of Education (DOE) is tasked with publishing "a form for reporting actual costs incurred by a nonpublic school in complying with a health, safety, or welfare requirement mandated under state law containing each health, safety, or welfare requirement mandated by a law or administrative rule of this state applicable to a nonpublic school and with a reference to each relevant provision of law or administrative rule for the requirement." MCL 388.1752b(2).[2]  And "a nonpublic school seeking reimbursement for actual costs incurred in complying with a health, safety, or welfare requirement under a law or administrative rule of this state" must timely submit a completed reporting form published by the DOE. MCL 388.1752b(3). "The superintendent shall determine the amount of funds to be paid to each nonpublic school in an amount that does not exceed the nonpublic school's actual costs in

---

[2] The current reimbursement form encompasses mandates on the following subjects: hazardous chemicals, MCL 29.5p; fire/tornado/lockdown/shelter in place, MCL 29.19; inspections of certain motor vehicles by state police, MCL 257.715a; pupil transportation, MCL 257.1807 to MCL 257.1873; food law, MCL 289.1101 to MCL 289.8111; pesticide application, MCL 324.8316; concussion education, MCL 333.9155 and MCL 333.9156; immunizations, MCL 333.9208; licensure of speech pathologists, MCL 333.17609; release of information to parent covered by personal protection order, MCL 380.1137a; immunization statement and vision screening, MCL 380.1177 and MCL 380.1177a; inhalers and epinephrine auto injectors, MCL 380.1179 and MCL 380.1179a; criminal background checks, MCL 380.1230 to MCL 380.1230h; noncertified teachers and counselors, MCL 380.1233; products containing mercury, MCL 380.1274b; teacher certification and administrator certificates, MCL 380.1531 to MCL 380.1538; convicted persons holding board approval, MCL 380.1539b; compulsory school attendance, MCL 380.1561; attendance records, MCL 380.1578; postsecondary enrollment options, MCL 388.514; postsecondary enrollment information and counseling, MCL 388.519 and MCL 388.520; private, denominational, and parochial schools, MCL 388.551 to MCL 388.557; school building construction, MCL 388.851 to MCL 388.855b; federal asbestos building regulations, MCL 388.863; career and technical prep programs and enrollment, 388.1904; career and technical prep information and counseling, MCL 388.1909 and MCL 388.1910; playground equipment safety, MCL 408.681 to MCL 408.687; youth employment standards and permits, MCL 409.104 to MCL 409.106; child care and criminal history and background, MCL 722.115c; child protection laws, MCL 722.621 to MCL 722.638; annual school bus inspections, Mich Admin Code, R 257.955; pesticide use, Mich Admin Code, R 285.637; food establishment manager certification, Mich Admin Code, R 289.570.1 to Mich Admin Code, R 289.570.6; blood-borne pathogens, Mich Admin Code, R 325.70001 to Mich Admin Code, R 325.70018; auxiliary services notification, Mich Admin Code, R 340.293; boarding school requirements, Mich Admin Code, R 340.484; emergency-situation permits, Mich Admin Code, R 390.1145; mentor teachers for noncertified instructors, Mich Admin Code, R 390.1146; and school counselor certification, Mich Admin Code, R 390.1147.

complying with a health, safety, or welfare requirement under a law or administrative rule of this state." MCL 388.1752b(4). The DOE is then directed to distribute funds to each of the nonpublic schools that timely submitted a completed form. *Id.* And with respect to actual costs, MCL 388.1752b(9) provides:

> For purposes of this section, "actual cost" means the hourly wage for the employee or employees performing a task or tasks required to comply with a health, safety, or welfare requirement under a law or administrative rule of this state identified by the department . . . and is to be calculated in accordance with the form published by the department . . ., which shall include a detailed itemization of costs. The nonpublic school shall not charge more than the hourly wage of its lowest-paid employee capable of performing a specific task regardless of whether that individual is available and regardless of who actually performs a specific task. Labor costs under this subsection shall be estimated and charged in increments of 15 minutes or more, with all partial time increments rounded down. When calculating costs . . ., fee components shall be itemized in a manner that expresses both the hourly wage and the number of hours charged. The nonpublic school may not charge any applicable labor charge amount to cover or partially cover the cost of health or fringe benefits. A nonpublic school shall not charge any overtime wages in the calculation of labor costs.

The statute particularly identifies a few costs that qualify as "actual costs" subject to reimbursement, providing that "the actual cost incurred by a nonpublic school for taking daily student attendance shall be considered an actual cost in complying with a health, safety, or welfare requirement under a law or administrative rule of this state." MCL 388.1752b(10). Further, "[t]raining fees, inspection fees, and criminal background check fees are considered actual costs in complying with a health, safety, or welfare requirement under a law or administrative rule of this state." *Id.*

## B. LITIGATION IN THE COURT OF CLAIMS

The case has a fairly lengthy history in the Court of Claims, as well as in this Court. We, however, need not explore the history in any great detail, as much of it is not relevant for purposes of resolving this appeal. In March 2017, plaintiffs filed their original complaint, challenging the constitutionality of the statute under Const 1963, art 4, § 30, and Const 1963, art 8, § 2, and seeking various forms of equitable relief. In June 2017, plaintiffs filed a first amended complaint, and a second amended complaint was later filed in April 2018,[3] with plaintiffs continuing to challenge the statute's constitutionality under the two constitutional provisions. Ultimately, the Court of Claims was faced with competing motions for summary disposition filed by the parties. In a written opinion and order, the Court of Claims granted plaintiffs' motion for summary disposition under MCR 2.116(C)(10) and denied defendants' motion.

---

[3] Hereafter, we shall simply make reference to the "amended complaint."

-4-

The Court of Claims first rejected defendants' argument that plaintiffs lacked standing to file suit, determining that plaintiffs had an interest that was substantial and distinct from the citizenry at large, considering that the disbursement of public funds to nonpublic schools would result in a diversion of those funds away from the coffers of Michigan public schools. Turning to the substantive issue, the Court of Claims ruled that MCL 388.1752b violates Const 1963, art 8, § 2, because it authorized the payment of public monies to aid or maintain nonpublic schools and to support the employment of persons at nonpublic schools. The Court of Claims struck down the entire statute and any and all possible disbursements no matter their nature, effectively declaring MCL 388.1752b facially unconstitutional. We shall delve into the particulars and reasoning behind the decision of the Court of Claims in our analysis below. In light of the constitutional violation, the Court of Claims enjoined and restrained defendants from distributing any funds under the statute. Finally, the Court of Claims explained that, given its ruling, it was unnecessary to address plaintiffs' argument under Const 1963, art 4, § 30. Defendants appeal as of right.

## II. ANALYSIS

### A. STANDING

Defendants initially argue that plaintiffs lacked standing to bring suit, contending that they "did not demonstrate that they have a special injury, right, or substantial interest that would be detrimentally affected in a manner different from the citizenry at large, so their constitutional challenge should be dismissed." Accordingly, defendants maintain that the Court of Claims erred in denying their motion for summary disposition. We review de novo a trial court's ruling on a motion for summary disposition, as well as the issue regarding whether a party has standing to file suit. *Groves v Dep't of Corrections*, 295 Mich App 1, 4; 811 NW2d 563 (2011).

In plaintiffs' amended complaint, they specifically alleged that they had standing under MCL 600.2041(3), MCR 2.201(B)(4), and *Lansing Schs Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010). MCL 600.2041(3) provides, in pertinent part, that "an action to prevent the illegal expenditure of state funds or to test the constitutionality of a statute relating thereto may be brought in the name of a domestic nonprofit corporation organized for civic, protective, or improvement purposes[.]" Similarly, MCR 2.201(B)(4)(a), crafted by our Supreme Court, provides that "[a]n action to prevent illegal expenditure of state funds or to test the constitutionality of a statute relating to such an expenditure may be brought . . . in the name of a domestic nonprofit corporation organized for civic, protective, or improvement purposes[.]" The instant litigation filed by plaintiffs is indisputably an action seeking to prevent the alleged illegal expenditure of state funds, testing the constitutionality of MCL 388.1752b. And defendants do not assert that any particular plaintiff is not a domestic nonprofit corporation that was organized for civic, protective, or improvement purposes.[4]

---

[4] The allegations in the amended complaint specifically identified the first four listed plaintiffs as being domestic nonprofit corporations organized for civic, protective, or improvement purposes. While perhaps there is an argument that the remaining plaintiffs do not fall within the parameters of MCL 600.2041(3) and MCR 2.201(B)(4)(a), defendants have chosen not to pursue that argument.

In *Lansing Schs Ed*, 487 Mich at 372, the Supreme Court held that "[a] litigant may have standing . . . if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large *or if the statutory scheme implies that the Legislature intended to confer standing on the litigant*." (Emphasis added.) MCL 600.2041(3) does more than imply an intent by the Legislature to confer standing on domestic nonprofit corporations that seek to challenge the constitutionality of a statute that allegedly provides for the illegal expenditure of state funds; it expressly declares such an intent. Accordingly, plaintiffs have standing to pursue their constitutional claims.

Defendants, citing *Mich Ed Ass'n v Superintendent of Pub Instruction*, 272 Mich App 1, 11-12; 724 NW2d 478 (2006), maintain that MCL 600.2041(3) and MCR 2.201(B)(4)(a) cannot supplant plaintiffs' constitutional obligation to show a special injury, right, or interest that is distinct from the general public. This argument ignores the change in Michigan jurisprudence regarding standing that occurred in 2010 with the issuance of *Lansing Schs Ed*. In *Mich Ed Ass'n*, 272 Mich App 1, 12, this Court, relying on *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608; 684 NW2d 800 (2004), and *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726; 629 NW2d 900 (2001), held "that to the extent that MCL 600.2041(3) and MCR 2.201(B)(4) confer standing broader than the limits imposed by Michigan's constitution, as determined by *Lee* and *Nat'l Wildlife*, MCL 600.2041(3) and MCR 2.201(B)(4) are unconstitutional." However, in *Lansing Schs Ed*, 487 Mich at 352-353, our Supreme Court reversed course, stating:

> We hold that the standing doctrine adopted in *Lee* . . ., and extended in later cases, such as *Nat'l Wildlife* . . ., lacks a basis in the Michigan Constitution and is inconsistent with Michigan's historical approach to standing. Therefore, we overrule *Lee* and its progeny and hold that Michigan standing jurisprudence should be restored to a limited, prudential approach that is consistent with Michigan's long-standing historical approach to standing.

*Mich Ed Ass'n*, being a progeny of *Lee*, was effectively overruled by the Supreme Court in *Lansing Schs Ed*. In sum, plaintiffs have standing under MCL 600.2041(3), MCR 2.201(B)(4)(a), and *Lansing Schs Ed*, as alleged in their amended complaint. We therefore affirm the ruling of the Court of Claims on the issue of standing, albeit for different reasons. See *Burise v City of Pontiac*, 282 Mich App 646, 647; 766 NW2d 311 (2009). We now address the substantive constitutional issue.[5]

---

[5] In a motion for peremptory reversal, defendants argued that plaintiffs failed to verify their original complaint as required by MCL 600.6431(1), rendering the complaint fatally defective, which could not be cured by the amended complaint, which was verified. This panel denied the motion for peremptory reversal. *Council of Orgs & Others for Ed v Michigan*, unpublished order of the Court of Appeals, entered August 1, 2018 (Docket No. 343801). Defendants did not include their peremptory reversal argument in their brief on appeal, which only included the standing issue and the substantive issue regarding the constitutionality of MCL 388.1752b. And defendants have not sought to amend or supplement their appellate brief to add the issue raised in

## B. CONSTITUTIONALITY OF THE STATUTE

### 1. UNDERLYING PRINCIPLES

" 'Statutes are presumed to be constitutional, and courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent.' " *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 307; 806 NW2d 683 (2011), quoting *Taylor v Gate Pharm*, 468 Mich 1, 6; 658 NW2d 127 (2003). The power to declare a statute unconstitutional must be exercised with extreme caution. *In re Request for Advisory Opinion*, 490 Mich at 307-308. "Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity." *Id.* at 308 (quotation marks omitted). The party challenging the constitutionality of a statutory provision has the burden to prove that it is unconstitutional. *Id.* We do not inquire into the wisdom of legislation when contemplating whether a statute is unconstitutional. *Id.*

With respect to whether a statutory provision is *facially* unconstitutional, as found by the Court of Claims in this case, it must be established that no set of circumstances exists pursuant to which the statute would be constitutionally valid. *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 303; 586 NW2d 894 (1998); *Council of Organizations & Others for Ed About Parochiaid, Inc v Governor*, 455 Mich 557, 568, 602; 566 NW2d 208 (1997). Indeed, if any factual situation can be conceived that would sustain a statute, the existence of that situation at the time of the statute's enactment must be assumed. *Council of Organizations & Others*, 455 Mich at 568-569.[6]

When reviewing and interpreting the Michigan Constitution, our objective is to effectuate the intent of the people who adopted it. *In re Request for Advisory Opinion*, 490 Mich at 309. "The lodestar principle is that of 'common understanding,' the sense of the words used that would have been most obvious to those who voted to adopt the constitution." *Id.* (quotation marks omitted). The construction that should be given to a constitutional provision is the one that reasonable minds, i.e., the great mass of the people, would give the provision. *Council of Organizations & Others*, 455 Mich at 569 (citations omitted).

### 2. CONST 1963, ART 8, § 2 (PROPOSAL C) AND *TRAVERSE CITY SCH DIST*

"Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged." Const 1963, art 8, § 1. In regard to Const 1963, art 8, § 2, the first paragraph provides:

---

the motion for peremptory reversal. Accordingly, we need not further address the argument given the denial of the motion.

[6] "An as-applied challenge, to be distinguished from a facial challenge, alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution of government action." *Bonner v City of Brighton*, 495 Mich 209, 223 n 27; 848 NW2d 380 (2014) (quotation marks omitted). In plaintiffs' amended complaint, they alleged that MCL 388.1752b "is unconstitutional on its face, or alternatively as applied."

The legislature shall maintain and support a system of free public elementary and secondary schools as defined by law. Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin.

Originally, this paragraph constituted the full extent of Const 1963, art 8, § 2. See *Traverse City Sch Dist*, 384 Mich at 404. As the result of a referendum on Proposal C in November 1970, the following language was added as a second paragraph to Const 1963, art 8, § 2:[7]

No public monies or property shall be appropriated or paid or any public credit utilized, by the legislature or any other political subdivision or agency of the state directly or indirectly to aid or maintain any private, denominational or other nonpublic, pre-elementary, elementary, or secondary school. No payment, credit, tax benefit, exemption or deductions, tuition voucher, subsidy, grant or loan of public monies or property shall be provided, directly or indirectly, to support the attendance of any student or the employment of any person at any such nonpublic school or at any location or institution where instruction is offered in whole or in part to such nonpublic school students. The legislature may provide for the transportation of students to and from any school.

We initially note that in *Traverse City Sch Dist*, 384 Mich at 415, our Supreme Court struck down as "unconstitutional, void and unenforceable" the following portion of the second sentence of Proposal C: "or at any location or institution where instruction is offered in whole or in part to such nonpublic school students." The Court held, however, that "[t]he remainder of Proposal C's language . . . raises no questions of unconstitutionality under the Michigan or the United States Constitutions." *Id.* at 436. Therefore, the unconstitutional portion of Proposal C was severable and removable, without altering the purpose and effect of the balance of Proposal C. *Id.* at 415.

Importantly, with respect to the construction of Proposal C overall, the Michigan Supreme Court in *Traverse City Sch Dist* discerned that its language, "read in the light of the circumstances leading up to and surrounding its adoption, and the common understanding of the words used, prohibits the purchase, with public funds, of *educational services* from a non-public school." *Id.* at 406-407 (emphasis added). The Court examined a wide variety of issues that had arisen from the adoption of Proposal C, reaching the following pertinent conclusions:

1. Proposal C above all else prohibits state funding of purchased educational services in the nonpublic school where the hiring and control is in the hands of the nonpublic school, otherwise known as "parochiaid." . . . .

2. Proposal C has no prohibitory impact upon shared time instruction wherever offered provided that the ultimate and immediate control of the subject

---

[7] See *Traverse City Sch Dist*, 384 Mich at 404.

matter, the personnel and the premises are under the public school system authorities and the courses are open to all eligible to attend the public school, *or absent such public school standards, when the shared time instruction is merely "incidental" or "casual" or non-instructional in character, subject, of course, to the issue of religious entanglement. . . . .* [8]

        3. Proposal C does not prohibit auxiliary services and drivers training, which are general health and safety services, wherever these services are offered except in those unlikely circumstances of religious entanglement.  [*Id.* at 435 (emphasis added).[9]]

The Supreme Court provided the following reasoning in support of these conclusions regarding Proposal C:

        The prohibitions of Proposal C have no impact upon auxiliary services. Since auxiliary services are general health and welfare measures, they have only an incidental relation to the instruction of private school children. They are related to educational instruction only in that by design and purpose they seek to provide for the physical health and safety of school children, or they treat physical and mental deficiencies of school children so that such children can learn like their normal peers. Consequently, the prohibitions of Proposal C which are keyed into prohibiting the passage of public funds into private school hands for purposes of running the private school operation are not applicable to auxiliary services which only incidentally involve the operation of educating private school children.

        In addition auxiliary services are similar to shared time instruction in that private schools exercise no control over them. They are performed by public employees under the exclusive direction of public authorities and are given to private school children by statutory direction, not by an administrative order from a private school.

        However, we must voice one caveat and that is the possibility of excessive entanglement between church and state when auxiliary services are offered at the private school. Since auxiliary services are general health and safety measures

---

[8] The Court earlier explained that "shared time" means "an operation whereby the public school district makes available courses in its general curriculum to both public and nonpublic school students normally on the premises of the public school." *Traverse City Sch Dist*, 384 Mich at 411 n 3.

[9] The Court identified "auxiliary services" according to a statutory provision, indicating that such services include, in part, special education, health, nursing, crossing guard, and speech correction services. *Traverse City Sch Dist*, 384 Mich at 417-418, quoting MCL 340.622, repealed by 1976 PA 451.

rather than instructional measures, the possibility of excessive involvement of the state in religious affairs is, of course, at most, minimal. [*Id.* at 419-420.]

According to the Court, "it is clear that health and safety measures only incidentally benefit religion and do not constitute state support of or excessive entanglement in religion." *Id.* at 434 n 22. The Court's emphasis on distinguishing general health and safety services from instructional or educational services for purposes of analyzing whether there is a violation of Proposal C was further reflected when the Court stated that it did "not read the prohibition against public expenditures to support the employment of persons at nonpublic schools to include policemen, firemen, nurses, counsellors and other persons engaged in governmental, health and general welfare activities." *Id.* at 420. The Court further indicated that because "the employment stricture [of Proposal C] is a part of the educational article of the constitution, we construe it to mean *employment for educational purposes only*." *Id.* at 421 (emphasis added). This construction of Proposal C lends strong support for defendants' position that the bar to allocating public monies to directly or indirectly aid a nonpublic school only serves to preclude such aid if designated for educational or instructional purposes, not health, safety, and welfare purposes that are non-instructional in nature.

### 3. *ADVISORY OPINION RE CONSTITUTIONALITY OF 1974 PA 242*

In *Advisory Opinion re Constitutionality of 1974 PA 242*, our Supreme Court held that the delivery of school supplies and textbooks by the state to students attending private schools violated Const 1963, art 8, § 2, as construed in *Traverse City Sch Dist*. Joined by three other Justices of the Court to form a majority, Justice SWAINSON, after examining *Traverse City Sch Dist*, observed and held:

> In my opinion the Court reached correct conclusions in the Traverse City School District case because the services examined therein were properly classified as "incidental" to a private school's establishment and existence. Such programs as shared time and auxiliary services to be sure, do help a private school compete in today's harsh economic climate; but, they are not "primary" elements necessary for the school's survival as an educational institution. These incidental services are useful only to an otherwise viable school and are not the type of services that flout the intent of the electorate expressed through Proposal C.
>
> A very different situation is presented, I find, in the case of the textbooks and supplies that would be made available to private schools under [the statute]. When we speak of textbooks and supplies we are no longer describing commodities "incidental" to a school's maintenance and support. Textbooks and supplies are essential aids that constitute a "primary" feature of the educational process and a "primary" element required for any school to exist. I quote from *Bond v Ann Arbor School Dist*, 383 Mich 693, 702; 178 NW2d 484; 41 ALR3d 742 (1970):
>
> "Applying either the 'necessary elements of any school's activity' test or the 'integral fundamental part of the elementary and secondary education' test, it is clear that books and school supplies are an essential part of a system of free public elementary and secondary schools."

However Proposal C is to be construed, I believe that if the will of the electorate is to be respected it must be read to bar public funding for primary and essential elements of a private school's existence. [*Advisory Opinion re Constitutionality of 1974 PA 242*, 394 Mich at 48-49 (citation omitted).]

There are two important footnotes in *Advisory Opinion re Constitutionality of 1974 PA 242* that need to be taken into consideration. First, the Court noted that the statute at issue provided that school supplies and textbooks were to be extended to all school age children, but "[i]n reality, and for the purposes of constitutional analysis, [the statute] provides the aid to the private schools." *Id.* at 49 n 4. This was a recognition that the state was attempting to provide direct aid to private schools. Second, Justice SWAINSON noted that "[s]ince Proposal C speaks broadly in terms of the support and maintenance of all private schools, I think it is a proper interpretation of the *Traverse City School Dist . . .* rule to state that Proposal C forbids aid that is a 'primary element' of the support and maintenance of a private school *but permits aid that is only 'incidental' to the private school's support and maintenance.*" *Id.* at 48 n 2 (emphasis added). When interpreting or divining a rule from *Traverse City Sch Dist*, we cannot ignore the fact that the majority in *Advisory Opinion re Constitutionality of 1974 PA 242* has already done so.[10]

### 4. DISCUSSION AND RESOLUTION

The interpretation and constitutionality of a statute present issues of law that are reviewed de novo on appeal. *Hunter v Hunter*, 484 Mich 247, 257; 771 NW2d 694 (2009). The language of Const 1963, art 8, § 2, or Proposal C, must ultimately be viewed through the lens of the Supreme Court's opinions in *Traverse City Sch Dist* and *Advisory Opinion re Constitutionality of 1974 PA 242*. Taking into consideration the Supreme Court's construction of Proposal C in these two cases, we hold that, without offending Const 1963, art 8, § 2 (Proposal C), the Legislature may allocate public funds to reimburse nonpublic schools for actual costs incurred in complying with state health, safety, and welfare laws. But only if the action or performance that must be undertaken in order to comply with a health, safety, or welfare mandate (1) is, at most, merely *incidental* to teaching and providing educational services to private school students (non-

---

[10] We recognize that "an advisory opinion does not constitute a decision of the [Supreme] Court and is not precedentially binding in the same sense as a decision of the Court after a hearing on the merits." *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich 441, 461 n 1; 208 NW2d 469 (1973). "[T]he constitutional provision authorizing advisory opinions was not intended to encroach upon the right of the people to an adjudicative determination of their particularized claims of unconstitutionality." *Id.* at 462 n 1. An advisory opinion "constitutes the opinion of the several justices signatory based upon the bare words of the act and unadorned by any facts or combination of facts[;] [i]t is no more." *Id.* It would thus seem fitting, especially in the context of a "facial" challenge regarding the constitutionality of a statute, to, at a minimum, give great weight to that part of an advisory opinion that construes the underlying constitutional language and creates the constitutional framework within which a statute is examined. Moreover, we believe that it should be left to the Michigan Supreme Court to revisit any prior advisory opinion regarding the proper construction of Proposal C, instead of having this Court question the wisdom of earlier interpretations.

instructional in nature), (2) does not constitute a *primary* function or element necessary for a nonpublic school to exist, operate, and survive, and (3) does not involve or result in excessive religious entanglement.

Consistent with these criteria, and as observed earlier, the Supreme Court in *Traverse City Sch Dist*, 384 Mich at 406-407, concluded that Proposal C prohibits the allocation of public funds for use at private schools in relation to "educational services." We also note a discussion by the Supreme Court in *Traverse City Sch Dist, id.* at 420, in which the Court stated that "auxiliary services are general health and safety measures," that the Legislature has statutory authority to define a service as an "auxiliary service," and that, despite this authority, the Legislature does not have "a blank check to make any service a health and safety measure outside the reach of Proposal C simply by calling it an auxiliary service." The undeniable point that flows from this discussion is that *true* health and safety measures fall outside the reach of Proposal C.

We conclude that the language utilized by the Legislature in MCL 388.1752b is generally consistent with the construction of Const 1963, art 8, § 2, by the Supreme Court in *Traverse City Sch Dist* and *Advisory Opinion re Constitutionality of 1974 PA 242*, which plainly was the legislative goal in crafting the statute. Moreover, what is ultimately relevant is not the descriptive words used by the Legislature in characterizing the reimbursable costs, but whether the reimbursable costs actually authorized under the statute offend Proposal C, as construed by our Supreme Court.[11] Again, the Court of Claims found that MCL 388.1752b is facially unconstitutional, so if even one factual scenario exists under which the statute could be applied in harmony with Const 1963, art 8, § 2, reversal would be warranted. *Council of Organizations & Others*, 455 Mich at 568-569. There is no need to go any further than MCL 388.1752b itself and subsection (10), which, designating it as an "actual cost," authorizes an allocation to reimburse a nonpublic school for payments made to cover "criminal background check fees." Such actual costs incurred by a private school are for the purpose of ensuring and advancing the safety and welfare of its students, weeding out prospective teachers and other school personnel

---

[11] In other words, merely because the Legislature describes appropriated funds as covering costs that are "incidental to the operation of a nonpublic school," MCL 388.1752b(7), does not make it so for purposes of determining the constitutionality of the statute. This would be akin to the Legislature expressly proclaiming in a statute that it is constitutional. For this very reason, the Court of Claims made much to do about nothing in supporting its decision by observing that the Legislature stated, in part, that the appropriated funds "are for purposes related to education." MCL 388.1752b(7). First, this provision is not inconsistent with our incidental-to-education analysis; the Legislature did not state that the funds are for purposes "of" education. Second, the Legislature immediately followed the phrase with the descriptive "incidental" language. MCL 388.1752b(7). Third, regardless of the legislative label and to our point, each reimbursable cost has to be particularly examined to determine whether it covers activities that are incidental to the education of students and the operation of a nonpublic school, constituting true health, safety, or welfare measures. See *Traverse City Sch Dist*, 384 Mich at 420 (Legislature does not have free reign to make any measure a health and safety measure in order to avoid Proposal C simply by defining it as such).

who might pose a risk of harm to students. The criminal background checks are mandated by state law. MCL 380.1230 and MCL 380.1230a.[12] Conducting criminal background checks is merely incidental to teaching and providing educational services to private school students (non-instructional in nature), it does not constitute a primary function or element necessary for a nonpublic school's existence, operation, and survival, and it does not involve or result in excessive religious entanglement. Accordingly, any determination that MCL 388.1752b is facially unconstitutional is rejected.

Reimbursement for payments made to cover criminal background check fees is not an anomaly. For example, MCL 388.1752b provides authority for reimbursement of actual costs associated with disposing of instruments containing mercury. See MCL 380.1274b.[13] Such actual costs incurred by a private school are for the purpose of protecting the health and welfare of its students, removing a hazard that could seriously jeopardize the health of a student. Disposing of instruments containing mercury located in a nonpublic school is merely incidental to teaching and providing educational services to private school students (non-instructional in nature), it does not constitute a primary function or element necessary for a nonpublic school's existence, operation, and survival, and it does not involve or result in excessive religious entanglement.

In another example, MCL 388.1752b provides authority to allocate public funds to reimburse a nonpublic school for actual costs incurred in maintaining "2 epinephrine auto-injectors" in the school as mandated by MCL 380.1179a(2). Such actual costs sustained by a private school are for the purpose of safeguarding the health and welfare of its students, allowing

---

[12] MCL 380.1230(1) provides:

> Except as otherwise provided in this section, upon an offer of initial employment being made by the board of a school district or intermediate school district or the governing body of a public school academy or *nonpublic school* to an individual for any full-time or part-time employment or when school officials learn that an individual is being assigned to regularly and continuously work under contract in any of its schools, the district, public school academy, or nonpublic school shall request from the criminal records division of the department of state police a criminal history check on the individual and, before employing the individual as a regular employee or allowing the individual to regularly and continuously work under contract in any of its schools, shall have received from the department of state police the report described in subsection (8). [Emphasis added.]

[13] MCL 380.1274b(3) provides:

> The board of a school district, local act school district, or intermediate school district; *governing board of a nonpublic school*; or board of directors of a public school academy shall ensure that the school district, intermediate school district, *nonpublic school*, or public school academy disposes of mercury and instruments containing mercury in accordance with applicable state and federal law. [Emphasis added.]

for the quick access and use of the device to treat an emergency situation involving a student who is suffering an anaphylactic reaction. Maintaining epinephrine auto-injectors in a nonpublic school is merely incidental to teaching and providing educational services to private school students (non-instructional in nature), it does not constitute a primary function or element necessary for a nonpublic school's existence, operation, and survival, and it does not involve or result in excessive religious entanglement.

We must speak to the definition of "actual cost" found in MCL 388.1752b(9), which provides, in part, that it "means the hourly wage for the employee or employees performing a task or tasks required to comply with a health, safety, or welfare requirement under a law or administrative rule of this state identified by the department[.]" Const 1963, art 8, § 2, prohibits any payment, directly or indirectly, to support "the employment of any person at any . . . nonpublic school." At first glance, the definition of "actual cost" appears to run afoul of Proposal C. Staying with the three examples, if an employee of a nonpublic school is tasked with preparing paperwork for submission to authorities as part of a criminal background check, tasked with locating and disposing of instruments containing mercury, or tasked with obtaining and maintaining epinephrine auto-injectors, payment of public funds to reimburse the private school for wages related to the work performed by the employee would appear to be a payment to support the employment of a private school employee. The Court of Claims rendered such a finding. However, the tasks being performed are for the health, safety, and welfare of schoolchildren and are merely incidental to providing educational services to the students; the tasks are non-instructional in nature. Accordingly, there is no violation of Proposal C. Our conclusion is buttressed by language in *Traverse City Sch Dist*, 384 Mich at 421, wherein the Court conveyed that because "the employment stricture [of Proposal C] is a part of the educational article of the constitution, we construe it to mean *employment for educational purposes only*." (Emphasis added.) When a nonpublic school employee is performing a health, safety, or welfare task mandated by law, he or she is not engaged, at that time, in employment for educational purposes, even if the remainder of that employee's workday is spent on educating or instructing students, for which there is no reimbursement. Public funds, therefore, are not aiding a person's employment as a teacher or educator at a nonpublic school.

The Court of Claims posited that because the purpose of MCL 388.1752b is to reimburse nonpublic schools for the cost of actions *mandated* by law, the actions involved cannot be deemed incidental to the education of private school children or the operation of the school, but concern primary functions or elements necessary for a school's survival. We disagree. A state law mandate on an issue concerning the *health, safety, or welfare* of a student almost by definition is "incidental" to teaching and providing educational services to a student. Indeed, the Supreme Court in *Traverse City Sch Dist*, 384 Mich at 419, stated that because "auxiliary services are general health and welfare measures, they have only an incidental relation to the instruction of private school children[,]" and "[t]hey are related to educational instruction only in that by design and purpose they seek to provide for the physical health and safety of school children[.]" Conducting criminal background checks, disposing of instruments containing mercury, and maintaining epinephrine auto-injectors, while mandatory, have nothing directly to do with teaching and educating students; such compliance actions are truly incidental to providing educational services and focus instead on a student's well-being, i.e., his or her health, safety, and welfare. Moreover, conducting criminal background checks, disposing of instruments containing mercury, and maintaining epinephrine auto-injectors are plainly not

-14-

*primary* elements or functions necessary for a nonpublic school's operation, but are simply incidental to a school's operation. While textbooks and school supplies plainly and undoubtedly "constitute a 'primary' feature of the educational process and a 'primary' element required for any school to exist," *Advisory Opinion re Constitutionality of 1974 PA 242*, 394 Mich at 49, we fail to see how a background check, mercury disposal, or carrying epinephrine auto-injectors equates to supplying school books used to teach and educate students on a daily basis; any comparison is strained and unreasonable.

Additionally, the Court of Claims indicated that state or public school control over such matters as shared time and auxiliary services is paramount to finding constitutional compliance and that MCL 388.1752b gives complete control to nonpublic schools. We disagree with this view and reasoning on two bases. First, considering the nature or character of the health, safety, and welfare laws at issue, the state, and not a nonpublic school, is effectively dictating and controlling the action or performance needed to comply with the law. Again staying with the three examples, and not foreclosing the possibility that the analysis may be different with respect to other mandates, there is little, if any, discretion or independent control that a private school can exercise when engaged in conducting criminal background checks, disposing of instruments containing mercury, and procuring epinephrine auto-injectors; colloquially speaking, you just do it as demanded by state statute or administrative rule. Second, the Supreme Court, as quoted earlier, stated that "Proposal C has no prohibitory impact upon shared time instruction wherever offered provided that the ultimate and immediate control of the subject matter, the personnel and the premises are under the public school system authorities and the courses are open to all eligible to attend the public school, *or absent such public school standards*, *when the shared time instruction is merely 'incidental' or 'casual' or non-instructional in character*." *Traverse City Sch Dist*, 384 Mich at 435 (emphasis added). The emphasized language reflects the proposition, which runs deeply through *Traverse City Sch Dist* and *Advisory Opinion re Constitutionality of 1974 PA 242*, that Proposal C was intended to prohibit the funding of educational services, not the funding of services that are merely incidental to teaching and providing educational services and operating a school, i.e., non-instructional in nature. *Advisory Opinion re Constitutionality of 1974 PA 242*, 394 Mich at 49 ("[I]ncidental services are useful only to an otherwise viable school and are not the type of services that flout the intent of the electorate expressed through Proposal C."); *Traverse City Sch Dist*, 384 Mich at 419 ("The prohibitions of Proposal C have no impact upon . . . health and welfare measures, [as] they have only an incidental relation to the instruction of private school children.").

The Court of Claims determined that "shared time" and auxiliary services approved in *Traverse City Sch Dist* do not constitute direct or indirect aid to nonpublic schools; rather, aid is directed solely to students, and MCL 388.1752b, in contravention of Proposal C, provides for direct aid to private schools. Assuming this is an accurate characterization, despite the fact that nonpublic school students certainly benefit from full and financially-assisted compliance with health, safety, and welfare laws, the distinction does not warrant the conclusion that MCL 388.1752b violates Const 1963, art 8, § 2. As noted in *Advisory Opinion re Constitutionality of 1974 PA 242*, 394 Mich at 48 n 2, Proposal C permits aid to private schools, so long as it is merely incidental to the private school's support and maintenance. In *Advisory Opinion re Constitutionality of 1974 PA 242, id.* at 49, the Supreme Court did not rule that a constitutional violation occurred because supplying textbooks and school supplies constituted direct aid to private schools; it found the statute unconstitutional because the nature or character of the aid reflected a " 'primary' feature of the educational process and a 'primary' element required for

any school to exist." Indeed, the Court expressly noted that Proposal C "permits aid" to nonpublic schools when the aid is merely incidental to a school's operation. *Id.* at 48 n 2.

The concurrence/dissent takes us to task for supposedly ignoring the plain language of Const 1963, art 8, § 2. Were we restricted to solely examining and contemplating the language of Const 1963, art 8, § 2, *absent any other considerations and on a clean slate*, we might very well agree with our colleague's position. But *Traverse City Sch Dist* and *Advisory Opinion re Constitutionality of 1974 PA 242* were issued and cannot be ignored. And while we appreciate that the concurrence/dissent disagrees with our interpretation of those two opinions, we respectfully disagree with her construction. In our view, *Traverse City Sch Dist* and *Advisory Opinion re Constitutionality of 1974 PA 242* compel us, for purposes of assessing the constitutionality of MCL 388.1752b, to distinguish between educational services and non-instructional services that are merely incidental to educating students and operating a nonpublic school, such as those involving compliance with health, safety, and welfare mandates. Contrary to the suggestion in the concurring/dissenting opinion that we created the three-part test out of whole cloth, we believe that the test accurately reflects the principles and framework established by our Supreme Court in the two opinions. Therefore, any subversion of the people's will, as the concurrence/dissent accuses us of participating in, can only be undone by the Michigan Supreme Court.[14]

In sum, with respect to the challenge under Const 1963, art 8, § 2, we reverse the ruling of the Court of Claims and remand for an examination, under the proper criteria outlined in this opinion, of each of the "actual costs" for which a nonpublic school may be reimbursed under the challenged legislation. We note that, should the Court of Claims conclude that a specific cost or action to comply with a mandate violates Const 1963, art 8, § 2, it may only strike or preclude

---

[14] With respect to footnote 3 in the concurring/dissenting opinion, the distinction between educational services and non-instructional services is not a distinction that we created, but one that emanates, in our view, from Supreme Court precedent. The concurrence/dissent's argument in footnote 3 would equally undermine allowing aid to support the shared-time and auxiliary services addressed in *Traverse City Sch Dist*, yet our Supreme Court found no constitutional infringement in regard to those services. The crux of our disagreement with the concurrence/dissent is not first-instance construction of Const 1963, art 8, § 2, but interpretation of binding Supreme Court opinions that have already construed the constitutional provision. Additionally, the concurrence/dissent is ultimately speculating in regard to the intent of the ratifiers relative to why the transportation language was included in Const 1963, art 8, § 2. We note that bus transportation for all students had a long statutory history prior to Proposal C. See *Traverse City Sch Dist*, 384 Mich at 407 n 2. Perhaps the intent of the transportation language was simply not to disrupt the ongoing applicability of the statute and to avoid any possible confusion on the matter of transportation by providing unmistakable clarity. As a final note, comparable to supplying school books to nonpublic schools as addressed in *Advisory Opinion re Constitutionality of 1974 PA 242*, we are not even convinced that transporting children to school is merely incidental to teaching and providing educational services, which is a necessary component of the constructional theory set forth in footnote 3 by the concurrence/dissent.

reimbursement for that cost or action, without invalidating the entire statute. See MCL 8.5.[15] Furthermore, the Court of Claims must also examine plaintiffs' contention that MCL 388.1752b violates Const 1963, art 4, § 30.[16]

Reversed and remanded to the Court of Claims for proceedings consistent with this opinion. We do not retain jurisdiction. We decline to award taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ Anica Letica

---

[15] MCL 8.5 provides:

> In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:

> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

[16] Although the parties wish us to resolve the challenge under Const 1963, art 4, § 30, the Court of Claims never reached the issue, and the Court of Claims is the proper judicial body to resolve the question in the first instance.